GEORGE REID, APPELLANT, v. THE SOUTHERN DEVELOPMENT COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF FLORIDA, APPELLEE.

1. When a particular provision of a statute relates to some immaterial matter, compliance with which is a matter of convenience rather than substance, or where the directions of a statute are given with a view to the proper, orderly and prompt conduct of business merely, the provision may generally be regarded as directory.

2. The failure of the assessor or his assistant to make at least one visit to each precinct for the purpose of receiving tax returns as required by section 15, Chapter 4322 acts of 1895, will not alone of itself vitiate the tax assessment. This provision of the statute is advisory or directory only.

3. The omission of words or marks to indicate dollars and cents as the amount of assessment on the assessor's book, when the entries are so made that the omission does not tend to mislead the owner of the land assessed, will not render the assessment void.

4. An objection to the introduction in evidence of a deed made

for the first time in this court will not generally be considered by the appellate court.

5. This court will not tax costs against appellee for the insertion upon his direction by the clerk of the Circuit Court in the transcript of the record of papers which have a material bearing upon the questions presented here and having relation to the order or decree appealed from.

This case was decided by Division B.

Appeal from the Circuit Court for Duval County.

## STATEMENT.

On the 24th day of September, 1903, the city of Jacksonville filed its bill of complaint against J. M. DeWall, The Southern Development Company, George Reid, *et al.,* to enforce its lien for unpaid taxes on certain real estate described therein. George C. Motes, one of the defendants, filed a disclaimer of any interest; George Reid, The Southern Development Company and James Johnson filed answers setting up their respective interests in the property, to which a replication was filed. All other defendants made default.

On the 2nd day of November, 1904, the court made and entered a final decree in favor of the city, directing a sale of the property in question, and decreeing that the master pay any excess from the sale, after paying the amount decreed in favor of the city, into the registry of the court to abide the further order of the court. The order of sale was confirmed.

On December 16th, 1904, The Southern Development

Company filed its petition to be paid the surplus in the treasury of the court, alleging that it was the owner of the property in question, to-wit: the south half of lot one in block thirteen, Springfield, a part of the city of Jacksonville, Duval County, Florida, by virtue of a tax deed duly executed and recorded, said deed being based on tax sale certificate number 578 of the sale of 1898, for the non-payment of taxes for the year 1897. It was further alleged that after the execution and delivery of said deed to it, The Southern Development Company went into the actual possession of the said property under said deed on the 3rd day of September, 1903, and has been in the actual, peaceable possession of said premises from the 3rd day of September, 1903, to the date of the execution and delivery of the master's deed in this cause, and has *bona fide* in good faith made permanent improvements on said property to the amount and value of $479.97.

On the 16th day of December, 1904, the court made and entered an order requiring Reid and Johnson to plead to the petition filed by The Southern Development Company in ten days.

On the 21st day of December, 1904, Reid filed his answer to the said petition alleging that said Southern Development Company was not the owner of the lot in question, that the tax deed under which petitioner claims title was void for the reasons following, to-wit: The Assessor of Taxes for Duval County during the year 1897, did not comply in any particular with the provisions of Section 15 of Chapter 4322 of the Laws of Florida, then in force; that said Assessor did not, in person or by his assistants appointed by the County Commissioners, ascer-

tain by diligent inquiry the names of all taxable persons in said county; that neither the Assessor or his assistant made any visit to each precinct for the purpose of receiving tax returns, after having given ten days' notice of such visit, between the first day of January and the first day of March, in said year, A. D. 1897, prior to the making up of said assessment roll; that the certificate on which the deed was issued by the Collector to the State in the name of the Treasurer was held by the State long after the time for redemption, and the title, if the sale was valid, had vested in the State, and the said petitioner could not acquire the title of the State by an assignmen of the tax sale certificate made by the Clerk; that at the time the said assessment was made and at the time of said sale J. M. DeWall and wife were openly and notoriously living on the said lot and claiming to own it. Replication was filed to this answer. Johnson also filed an answer to the petition. Reid also filed his petition for the surplus, and it was answered by The Southern Development Company, and replication was filed to its answer.

On the 14th day of February, 1905, the court made an order that the petition of said company be referred to Chas. S. Adams, Esq., as special master, "to ascertain and report to the court whether or not the tax deed, a copy of which is attached to said petition, is valid and passed to petitioner the title to said land therein mentioned and whether or not petitioner is entitled to any of the said funds in the registry of the court," the master to report his findings to the court and the evidence on which he acted. On August 2nd, 1905, he filed a report stating his "Findings of Fact," and "Arguments and Findings of Law." Such of the matter as may be necessary will be stated in the opinion.

On the 3rd day of August, 1905, George Reid filed his exceptions to said report of the master. There are four exceptions. The first is to the finding that the assessment of taxes upon S½ of lot one in block 13, Springfield, for 1897, was sufficient; that certificate 578 of the sale of July 4th, 1898, for the taxes of 1897 was valid; second, that the State of Florida transferred the title of said lot to the petitioner; third, that the tax deed in evidence is based upon said assessment and sale and was valid; fourth, that the petitioner is entitled to the entire proceeds in the registry of the court arising from the sale of the property.

On the 20th of March, 1906, the court made an order overruling the said exceptions, and on the 28th day of March, 1906, the court rendered a decree confirming said report and directing the Clerk to pay over the funds in the registry of the court to the Southern Development Company.

From this decree the appeal is taken.

*Wm. B. Young,* for Appellant.

*Cooper & Cooper,* for Appellee.

PARKHILL, J. (*after stating the facts*) : There are four assignments of error, to-wit:

1. The court erred in not sustaining the exceptions to the master's report.

2. The court erred in overruling the exceptions to the master's report.

3. The court erred in rendering the decree of March 28th, 1906.

4. The court erred in directing the surplus funds in

the registry of the court paid over to the Southern Development Company.

It is stated by counsel for appellant that the real and only question in this case is, whether or not the assessment upon which the tax deed is based was valid.

The order of reference to the master directed him "to ascertain and report to the court whether or not the tax deed of the petitioner is valid and passed title to the land mentioned." In response to the decree of reference the finding of the master is as follows: "The Special Master finds as matter of law that the assessment of taxes upon the south half (S½) of lot one (1) block thirteen (13), Springfield, for the year 1897, was sufficient; that certificate No. 578 of the sale of July 4th, 1898, for the taxes of 1897 was valid; that the State of Florida transferred title thereto by assignment to the petitioner, Southern Development Company; that the tax deed in evidence based upon said assessment, sale and certificate was valid, and that said petitioner who entered into possession under the same and improved the property is entitled to the entire proceeds in the registry of the court arising from the sale of the property at the suit of the city of Jacksonville, less such costs and expenses as this Honorable Court may tax against said fund."

As the counsel for appellant states the point, if the deed was valid and vested the title in the petitioner, then the Southern Development Company was entitled to the money in the registry of the court. On the other hand, if the assessment was void, then the tax deed was not valid, the petitioner was not the owner of the lot and was not entitled to the money in the registry of the court. This being so, we will follow the argument of counsel for appellant, confining the discussion to the validity or in-

validity of the assessment on which the tax deed is based.

1. It is contended that the assessment was void because the Assessor did not comply with the requirement of Section 15, Chapter 4322, Acts of 1895, in this: "that the Tax Assessor did not ascertain by diligent inquiry the names of all taxable persons and all taxable property, and that neither the Assessor or his assistant made any visit to the precinct in which the property in question was situated in 1897, or any other year for the purpose of receiving tax returns." So much of the section just named as is necessary to quote here is as follows: "Sec. 15. Between the first day of January and the first day of July in each year, the Assessor in each county, with the aid of such assistant assessors as may be nominated by the Assessor and appointed by the County Commissioners, shall ascertain by diligent inquiry the names of all taxable persons in his county and also all their taxable personal property and all taxable real estate therein on the first day of January of such year, and shall make out an assessment roll of all such taxable property; and the Assessor or his assistant shall make at least one visit to each precinct for the purpose of receiving tax returns, after having given ten days' notice of such visit, between the first day of January and the first day of March, and tax returns by the owners or agents must be made between the first day of January and the first day of April."

The evidence in this case does not show that the Tax Assessor did not ascertain by diligent inquiry the names of all taxable persons in his county and all their taxable personal property. and all taxable real estate therein as he was required to do by the provisions of this section. It is unnecessary, therefore, for us to decide whether or not this provision of the statute is mandatory or only ad-

visory, and whether a failure on the part of the Assessor to comply with this provision would vitiate the assessment of taxes made by him. In view, however, of the discussion of another provision of this section which is to follow, it will be well to refer now to what the Supreme Court of Michigan said in this connection, of a similiar statute. Section 12, Public Acts of 1891, No. 200 of Michigan, is in part as follows: "It shall be the duty of each Supervisor or Assessing officer, as soon as possible after entering upon the duties of his office, to ascertain the taxable property of his assessing district, and the persons to whom it should be assessed, and their residences, &c." Section 103 of the same act provides that any officer who shall wilfully neglect or refuse to perform any of the duties imposed upon him by this act shall be guilty of a misdemeanor, and on conviction thereof be punished by imprisonment in the county jail not exceeding one year or by a fine not exceeding five hundred dollars.

In the case of Turner, Prosecuting Attorney, v. Dickerman, Circuit Judge of Muskegon County, 95 Mich. 1, 54 N. W. Rep. 705, the court in considering an application for a writ of mandamus to compel the respondent to vacate an order quashing an information filed against a Supervisor charging him with wilful neglect of the duty imposed upon him by Section 12 of the act just quoted, said: "Failure to comply with this provision, both on the part of the Assessor and of persons to furnish the statement, may not affect the validity of the tax roll; and, even if in this respect the statute be held not mandatory, still the Assessor will not for that reason be relieved from the performance of the duty imposed upon him."

The evidence in this case *does* show that the Assessor

did not comply with that portion of Section 15, Chapter 4322, Acts of 1895, whereby it is provided that "the Assessor or his assistant shall make at least one visit to each precinct for the purpose of receiving tax returns, after giving ten days' notice of such visit, between the first day of January and the first day of March." The question arises, therefore, whether this provision of the statute is mandatory and a failure of the Assessor to comply therewith will so vitiate the assessment as to render nugatory all subsequent proceedings and annul all sales for taxes made under it; or whether it is merely directory or advisory and not essential to the validity of the proceedings.

In Hurford v. City of Omaha, 4 Neb. 336, the court said: "When a particular provision of a statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of a statute are given with a view to the proper, orderly and prompt conduct of business merely, the provision may generally be regarded as directory." See, also, Fraser v. Willey, 2 Fla. 116; Williams v. Moseley, Ib. 304, text 334; 26 Am. & Eng. Ency. Law (2nd ed.) 689, 690; Holland v. Osgood, 8 Vt. 276; Bladen v. Philadelphia, 60 Pa. St. 464; United States v. De Visser, Ex'x., 10 Fed. Rep. 642.

In the case of City of Orlando v. Equitable Building and Loan Association, 45 Fla. 507, text 522, 33 South. Rep. 986, this court said: "Failure to comply strictly with those provisions of tax laws which are intended for the guide of officers in the conduct of busineess devolved upon them, designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected will not usually render the proceeding void, but where the requi-

sites prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and a disregard of them might and generally would injuriously affect his rights, they can not be disregarded, and failure to comply with them will render the proceeding invalid." O'Neal v. Virginia and Maryland Bridge Company, 18 Md. 1.

Now, according to these principles can it be said that the simple failure of the Assessor or his assistant to make at least one visit to each precinct for the *purpose of receiving tax returns* will vitiate the assessment and render the whole tax invalid? Undoubtedly this provision of the statute ought to be complied with as a directory requirement of the law, and no Assessor fully performs his duty without doing so, yet his failure in this respect is no reason to set aside the assessment. It is clear that this provision of the statute is advisory or directory only. It directs the mode of proceeding by the Assessor, and secures system, uniformity and dispatch in the conduct of the office. It is for the *convenience* of the taxpayer, also, but not for his *protection*. It protects him in no right, and relieves him of no duty. It simply requires the Assessor to visit the precinct to *receive the tax returns* from the taxpayer. It serves the purpose of taking the Assessor to the precinct of the taxpayer for the purpose of receiving the tax returns. If for any reason the taxpayer finds it inconvenient to give in his tax returns at the office of the Assessor in the court house, he has this assurance that the Assessor will make one visit to the precinct of the taxpayer to receive his tax return. But if the Assessor does not visit the precincts to receive the tax returns, the taxpayer is not deprived of the right or relieved of the duty of making his tax returns, and he

still has the opportunity of delivering them to the Assessor. The taxpayer is not confined by the law to making his return to the Assessor within the precinct, or on the occasion of the Assessor's visit for the purpose of receiving tax returns, or to the time between the first day of January and the first of *March* when such visits should be made by the Assessor. The taxpayer may make his returns to the Assessor at his office in the court house, and he may make them at any time between the first day of January and the first day of *April*—one month after he has seen that the Assessor will not visit the precinct to receive the returns. These very provisions of the statute show that the Legislature contemplated the possible failure of the Assessor to comply with the law in this respect and that it did not intend to make a strict performance of this requirement of the law essential to the validity of the assessment. The clause of the statute requiring the Assessor to go to the precincts of the county to receive the tax returns does not impose any new duty upon the Assessor as to the principle or manner of making the assessment, and is merely advisory or directory. And so in Hazzard v. O'Bannon, 36 Fed. Rep. 854, it is held: "The omission of the Assessor to call at complainant's office for a statement of his taxable property and to leave a notice as provided by the statute, does not affect the validity of the assessment, such provisions being merely directory." See, also, Stieff v. Hartwell, 35 Fla. 606, 17 South. Rep. 899; Moore Adm'r. v. Turner, 43 Ark. 243; Norwegian Street, 81 Pa. St. 349; State Auditor v. Jackson County, 65 Ala. 142; Burroughs on Taxation, 249; Mills v. Gleason, 11 Wis. 470, text 515; Boorman v. Juneau County, 76 Wis. 550, 45 N. W. Rep. 675; Sprague v. Bailey, 19 Pick. 436, text 441.

Reid v. Southern Development Co.—Opinion of Court.

II.   Again, it is contended that the assessment is void because there is no word or mark to indicate dollars and cents prefixed to the figures representing the value of the property and the amount of State and county tax in columns number 8, 9, 10 and 11 of the assessment roll. The following is a copy of page 94 of the Assessor's book for the year 1897, showing the assessment of the real estate involved in this suit:

Reid v. Southern Development Co.—Opinion of Court.

| 1 | 2 | 3 | | | | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date of receipt given by Tax Collector to Tax Payer. | Number of receipt. | Description of Land. Parts of Section. | Section. | Township. | Range | Number of acres. | State of Florida. Duval County. Revenue for 1897. Name of owner, or person in whose name return is made. When return is not made enter the word "Unknown." | Number of acres improved and cultivated. | Valuation, except town or city lots. | Valuation of town or city lots. | Aggregate value of real estate. This is obtained by adding columns 7 and 8. | Total amount of State taxes, 5 1-2 mills, or 53 cents on $100. | Total amount of county taxes- 11 3-4 mills, or 118 cents on $100. |
| | 578 | S 1-2 Lot 1, Block 13, Springfield. | | | | | "Unknown." | | | 10 0 0 | 10 0 0 | 8 15 | 17 05 |

Appellant argues that it is uncertain whether the figures 600, 315 and 705 stand for cents, dollars or eagles; that these figures are meaningless, and hence that there has not been an assessment of the realty.

Sections 22 and 29 of Chapter 4322, Acts of 1895, require the Assessor to set down in the assessment roll the cash value of the land, and afterwards to calculate and carry out the total amount of State taxes and the total amount of county taxes in two separate columns prepared for that purpose in the assessment roll, setting opposite to the aggregate sum set down as the valuation of real and personal estate the respective sums assessed as taxes thereon in *dollars and cents.*

In 1 Blackwell on Tax Titles, Section 294, it is said: "The cases vary considerably in the distance in which they will go in inferring the meaning of figures from their position, space lines, etc., in case of the omission of the appropriate marks. The tendency is to uphold the list, if the meaning is clear by any means, either expressed or by fair and substantial inferences."

In the case of DeLashmutt v. Sellwood, 10 Ore. 319, text 324, the court said: "In the case of *French et al. v. Rogers,* disposed of at the last term, we held, in effect, that any mark commonly understood and ordinarily employed in business transactions to denote the division of figures, obviously representing money, into dollars and cents, would suffice for that purpose, in entries of this character. Such we deemed the mark ordinarily used in setting down sums of money on paper, to denote the amount represented by the two figures on the right as cents, and that represented by the figures on the left as dollars; and the same effect in our judgment must be allowed to the lines and spaces in the ruled money col-

umns, in regular account books, or official records similarly prepared. General usage and common understanding have given such marks and lines, when so employed, a signification by which not individuals only, but courts as well, are enabled to determine what, and what amount figures so placed were intended to represent, with as much ease and almost as much certainty as though the dollar mark itself, or written words even had been used to express the same meaning. To the doctrine of that case we still adhere."

It will be observed that the columns numbered 10 and 11, designating the amount of tax is divided by perpendicular lines, the wider space on the right of the column being sufficient for the insertion of two figures evidently intended to represent cents, and the narrow spaces on the left of sufficient size to admit of the insertion of only one figure to represent dollars. It will be noticed that the perpendicular lines which divide columns 8 and 9 are only far enough apart to admit of the insertion of one figure to represent dollars, as the valuation of the real estate would hardly be less than a dollar, and such values are not carried into cents. In the heading of columns number 10 and 11, the dollars mark $ and the word cents are used to express the rate of taxation. Multiplying the figures 600 found in the columns showing the valuation of the real estate by the rate of taxation 53 cents on each $100 for State taxes and 118 cents on each $100 for county taxes, expressed in columns 10 and 11, the calculation makes it clear that the figures |6|0|0| mean $600, and the figures |3|15| and |7|05| mean $3.15 and $7.05, respectively. And so, in the case of Gutzwiller v. Crowe, 32 Minn. 70, 19 N. W. Rep. 344, the court held that the

39—S. C.

meaning was plain, where figures in a column for taxes were separated by a line, saying: "The short perpendicular line which separates these is a decimal line commonly used to mark the separation of dollars and cents."

The following cases hold that the omission of words or marks to indicate dollars and cents as the amount of assessment on the Assessor's book, when the entries are so made that the omission does not tend to mislead the owner of the land assessed, · will not render the assessment void: Jenkins v. McTigue, 22 Fed. Rep. 148; Ensign v. Barse, 107 N. Y. 329, 14 N. E. Rep. 400; Sawyer v. Gleason, 59 N. H. 140; Cahoon v. Coe, 52 N. H. 518, text 524; State· v. Eureka Consolidated Mining Co., 8 Nev. 15; Bird v. Perkins, 33 Mich. 28; Midland Railway Co. v. State, 11 Ind. App. 433; Hopkins v. Young, 15 R. I. 48, 22 Atl. Rep. 926; Chamberlain v. Taylor, 36 Hun. 24; Ward v. Commissioners of Gallatin County, 12 Mont. 23, 29 Pac. Rep. 658; Spokane Falls v. Browne, 3 Wash. 84, 27 Pac. Rep. 1077; First National Bank of St. Joseph v. Township of St. Joseph, 46 Mich. 526, N. W. Rep. 838; Collins v. Welch, 38 Minn. 62, 35 N. W. Rep. 566. See, also, Stockle v. Silsbee, 41 Mich, 615, 2 N. W. Rep. 900. We have carefully examined the cases of Lawrence v. Fast, 20 Ill. 339, and Hurlbutt v. Butenop, 27 Cal. 50, cited by counsel for appellant. In California, Illinois and Tennessee it has been held that defects of this character invalidate the assessment and avoid the tax. It should be noted, however, that in Illinois and Tennessee the question arose upon *judgments* against delinquent taxpayers, where greater strictness would be required, and that the decision in each case proceeds upon the ground that nothing appeared by which it could be determined what value had been put upon the property. Hopkins v. Young,

*supra.* The case of Lawrence v. Fast, *supra,* involved the validity of a *judgment* for unpaid taxes, but this doctrine, as applied to an assessment, has been expressly repudiated in Illinois. Midland Railway Co. v. State, *supra.* In Chickering v. Faile, 38 Ill. 342, and Elston v. Kennicott, 46 Ill. 187, text 202, it was decided that such a defect does not invalidate a tax assessment. See, also, the case of State v. Eureka Consolidated Mining Co., 8 Nev. 15, text 27, where the decisions of California and Illinois courts are reviewed at length. The defect urged here does not invalidate the assessment, and we think our conclusion is supported by reason and a decided preponderance of authority.

III. Counsel for appellant now contends, in the following language, that the assessment is void: "The description of the land is too indefinite. The court knows judicially that there is no city or town in Duval County, and never has been, called Springfield. The evidence taken before the master shows that it is part of the city of Jacksonville, that is so known, but there is nothing on the assessment roll to show where it is located."

This objection was not made in or ruled upon by the court below. It is made now for the first time in this court. Appellant and appellee have proceeded up to this time upon the assumption that Springfield was a part of the city of Jacksonville. Indeed, the lot described in the assessment has been fully identified in the record, in the decree of sale and in the pleadings, as a part of the city of Jacksonville, and Springfield has been thus identified as being a part of the city of Jacksonville. The witnesses examined in the case identify Springfield as a part of Jacksonville. We cannot consider, therefore, the ob-

jection made now for the first time that the description of the land is too indefinite.  To hold otherwise, under the circumstances here disclosed, would be to permit a party to surprise or mislead his adversary, or to make objections which, if made in the court below, might have been obviated or would probably have been correctly decided there.  Southern Life Insurance and Trust Co. v. Cole, 4 Fla. 359; Taylor v. Baker, 1 Fla. 245, text 255; Bush v. Adams, 25 Fla. 809, 6 South. Rep. 860; Marsh v. Bennett, 49 Fla. 186, 38 South. Rep. 237; Glos v. McKerlie, 212 Ill. 632, 72 N. E. Rep. 700; Louisville & E. Mail Co. v. Barbour, 88 Ky. 73, 9 S. W. Rep. 516; Smith v. McDonald (Mich.), 102 N. W. Rep. 738; Van Alstyne v. Franklin Council No. 41 J. O. U. A. M., 69 N. J. L. 672, 58 Atl. Rep. 818.

IV.  Council for appellant calls our attention to the fact that appellant gave directions to include in the transcript a *recital* of the fact of filing a petition by George Reid, appellant, for the surplus in the registry of the court, and that appellee filed an answer thereto; but that the appellee directed the Clerk to *copy* the petition of appellant and the answer of appellee to said petition in the transcript.  In this way, it is claimed that the record has been encumbered with unnecessary matter and the costs increased.  We are not prepared to say that these papers have no material bearing upon the questions presented here.  They appear to be properly a part of the record, having relation to the order or decree appealed from.  The petition of appellant is useful now to show the appellant's identification of the lot and Springfield as being a part of the city of Jacksonville.

The appellant directed the omission of the argument

and quotation of authorities by the master from his report, but the appellee directed the Clerk to copy these portions of the master's report in the transcript. This is complained of by appellant as being unnecessary and as increasing the costs.

While the master's report may be said to be prolix, with this exception, we rarely ever see one prepared with more care and ability. We are satisfied that there was no intention on the part of the master to pad his report. We must be a little cautious how we permit the master's report to be cut up, and parts of it to be omitted from the transcript. We do not think that this is a case where we ought to tax costs against appellee.

The decree is affirmed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.