OF THE

## STATE OF NEVADA.

### APRIL TERM, 1872.

8   15
13  216
13  250
15  389

8   15,
21  18
23* 801

THE STATE OF NEVADA, RESPONDENT, *v.* EUREKA CONSOLIDATED MINING COMPANY *et als.*, APPELLANTS.

TAXES ON PROCEEDS OF MINES—WHEN THE "FIFTEEN DOLLARS PER TON" EXEMPTION APPLIES. The act of February 28, 1871, for the taxation of the net proceeds of mines, (Stats. 1871, 87) in providing "that an additional exemption of fifteen dollars per ton may be allowed on all ores worked by Freiburg or dry process," does not authorize an exemption of fifteen dollars per ton on all ores so worked in addition to the actual cost of working them, but only where such actual cost exceeds sixty per cent. of the gross yield.

LEGISLATIVE INTENT OF ACT TO TAX NET PROCEEDS OF MINES. In the passage of the act of February 28, 1871, for the taxation of the net proceeds of mines, (Stats. 1871, 87) the legislative intent obviously was, first, to tax the gross yield less the actual cost; and, second, to limit a maximum, beyond which not even actual cost should be deducted: in other words, to exempt only the actual cost, provided it did not exceed sixty per cent. of the gross yield in case of ores worked by wet process, and sixty per cent., together with fifteen dollars per ton, in case of ores worked by dry process.

OMISSION OF "DOLLAR MARK" IN TAX ASSESSMENT ROLL. In an action to recover delinquent taxes on the net proceeds of mines, where plaintiff was allowed to introduce in evidence the original assessment roll, notwithstanding there was no dollar mark attached to the figures purporting to indicate the amount of the tax due or assessed, and it was objected to on that ground : *Held*, that the fair and reasonable presumption, in the absence of anything to show to the contrary, was that the figures, disposed in perpendicular columns in the form prescribed by statute, indicated dollars and cents, and that the admission of the roll in evidence was not error.

State v. Eureka Consolidated Mining Company.

SUFFICIENCY OF DELINQUENT TAX ASSESSMENT ROLL.    Where a delinquent
assessment roll, objected to for want of the "dollar-mark," had such mark pre-
fixed to all the columns except the last, headed "total amount of tax," which,
however, was added up and the mark prefixed to the sum total: *Held*, that such
roll furnished sufficient legal evidence to enable a court to determine with cer-
tainty the amount of the tax, and that in a suit for delinquency such roll was all
the plaintiff need introduce to make out a *prima facie* case.

IRRELEVANT MATTER IN "STATEMENTS" OF PROCEEDS OF MINES.    Matters in-
serted in a statement of the proceeds of a mine such as is required to be fur-
nished by the mining tax law, (Stats. 1871, 87) the insertion of which is not
authorized by the statute, go for nothing and the assessor is not bound to pay
any regard to them.

OBJECT OF NOTICE BY ASSESSOR OF UNPAID TAXES ON MINES.    The written
notice required by section 7 of the mining tax law, (Stats. 1871, 87) to be given
by the assessor to parties engaged in reducing ores, is not a prerequisite to lia-
bility of the producer for the tax, but only intended to hold a party reducing ores
extracted by others to the extent of the value of the ores in his possession when
notified.

TAXES ON PROCEEDS OF MINES TO BE COLLECTED QUARTERLY.    There is noth-
ing in the use of the word "manner" in section 10 of the mining tax law, (Stats.
1871, 87) which provides that the collection shall be enforced in the same man-
ner as on other kinds of personal property, to prevent the collection of such
taxes quarterly—the word "manner" as there used does not mean "time."

APPEAL from the District Court of the Sixth Judicial Dis-
trict, Lander County.

This was an action against the Eureka Consolidated Min-
ing Company, and the possessory claims to the mines or
mining claims, known as the "Eureka Consolidated Mines,"
in the Eureka Mining District, Lander County, brought to
recover the taxes imposed on the net proceeds of such mines
for the quarter ending March 31, 1871.  The complaint sets
forth that the gross yield of those mines for that period
was $107,262; that the deductions for costs allowed by law
was $64,357 20, being sixty per cent. of the gross yield,
leaving $42,904 80 as net proceeds subject to taxation; and
demanding judgment for $1244 24 as the tax on said net
proceeds.

It appears from the statement furnished by the superin-
tendent of the mines to the assessor, that the gross yield
amounted to 2998 tons worked by dry or roasting process,
of the gross value of $107,262, and that the cost of mining,
reducing, and transportation exceeded sixty per cent., but

he did not say how much.   He then claimed to deduct sixty per cent., amounting to $64,357 20, and in addition thereto fifteen dollars per ton, amounting to $44,970, making in all $109,327 20, or in other words a sum exceeding the gross yield.   The defendants adopted this view of the matter, and claimed that they were not liable to any tax whatsoever. Other facts are stated in the opinion.

There having been a judgment in the court below for the plaintiff as prayed, and a motion for new trial overruled, defendants appealed from the judgment and order.

. *H. Mayenbaum,* for Appellants.

I.   There is an absolute exemption of fifteen dollars per ton allowed on all ores worked by dry process; it is an additional and arbitrary exemption, without reference to cost allowed on all ores worked by dry process.   The rule was adopted for the purpose of arriving at the value of the ore thus worked, and is no more arbitrary than the rule in the old law exempting forty dollars per ton on all ores worked by roasting process, and eighteen dollars per ton on ores worked by wet process.   The legislature declares that an additional exemption of fifteen dollars per ton in dry process shall be allowed, and this it had the right to do, just the same as it had under the old law, whereby it allowed double the exemption for roasting process that it allowed for wet process.   See *State* v. *Estabrook,* 3 Nev. 179; *Virginia City* v. *Chollar Potosi,* 2 Nev. 92.

II.   The assessor was bound to assess the ores according to the written statement of the defendants' superintendent, and it is only in case of the refusal of a party to make such statement, that the assessor is authorized to assess from other sources.   Besides, notice in writing was a prerequisite to the liability of the defendants for taxes; and as the general statute for the collection of taxes on the proceeds of mines must be followed, the collection cannot be made quarterly, but must be made annually in the same manner as taxes on other property is collected.   Stats. 1871, 87, Secs. 4, 7, and 10.

III.   The assessment roll, as well as the delinquent list, are radically defective in failing to indicate what is meant by the figures.   27 Cal. 50; 30 Cal. 610; 31 Cal. 132.

*C. R. Greathouse*, also for Appellants.

The question is whether the words "additional exemption of fifteen dollars per ton," mean in fact an exemption and that amount to be deducted from every ton worked by these processes in addition to the other specified deductions for extraction, etc., or whether the limit of sixty per centum on the gross value is simply extended, so that the specified deductions for extraction, etc., may (should they amount to so much) go beyond the sixty per centum to an extent not exceeding fifteen dollars per ton.   The words "additional exemption of fifteen dollars" certainly imply that there are some other exemptions, and if we can discover what these are, the section is relieved from all ambiguity.   See Webster's definitions of "exempt" and "exemption."   With these definitions in view, it is clear that the sixty per centum is not an *exemption;* upon the contrary, it is a *limit* upon the exemptions made by the deductions for extraction, etc.   If then this per centum is not an exemption, the fifteen dollars cannot with propriety be coupled with it as an "additional exemption," and it therefore follows that it is an exemption additional to those to be made for the extraction, transportation, and reduction, or sale of the ore.

The assessment should be made as follows: From the gross value of the ore deduct the actual cost of extraction, reduction, etc., or if this exceeds sixty per centum of the gross yield, only deduct this percentage; then from the remainder deduct the additional exemption of fifteen dollars for each ton and the remainder is subject to taxation.

*A. M. Hillhouse* and *N. D. Anderson*, District Attorney, for Respondent.

I.   If the latter part of section 1, of the act of 1871, is valid for any purpose, it is only to allow an additional amount as cost of extraction and milling, etc., when such actual cost

exceeds the percentage first limited; and then only to such an extent as such actual expenses exceed such percentage. In this view, passing the question of the unconstitutionality of the portion of the section referred to, the first part of the law makes the levy, and then provides for the assessment; that is, on that ore which is worth certain sums, certain percentages are allowed, when the actual cost of extracting, etc., amounts to as much as the percentage. But it is plain that no certain per cent. is allowed, unless the actual cost of extracting, etc., amount to that much. The title of the act, as also the act itself, shows that the "net proceeds" are to be taxed. No arbitrary allowance is made. No exemption, but actual cost. Then, if we proceed to interpret the latter clause of section 1 in the same manner as the first portion, we find that it means that if ore is worked by dry or Freiburg process, and it costs by reason of such process more than the per cent. allowed, then such additional cost, not to exceed the fifteen dollar limit, may be allowed; that is, if it exceed the per cent. limited one dollar, or two dollars, or fifteen dollars, that may be allowed. This would render the law uniform, and give to those who work ores by the more expensive process the advantage of their full actual cost of extracting, etc.

II.   A technical objection is made that the dollar marks do not appear in the assessment roll or delinquent list.   While we admit that the California courts have at one time held to such a doctrine, we must be permitted to say that no such rule ever can or should be sustained, by reason or justice. The court that rendered that decision certainly forgot or overlooked the facts that from the levy we find the per cent. to be collected; from the statement the amount to be taxed; and that the tax is computed and shown in the list.   Taking all together, how any one could say there was any uncertainty what the figures stand for, seems very much like presuming on the ignorance of courts and juries.   But in this case all such questions are avoided; because the pleadings show clearly the value of property taxed, as also the tax on the same.

III.   We are also met with the objection that the assessment was erroneous because the assessor did not follow the statement furnished; and that no demand was proven.   It appears however that the superintendent did furnish a statement from which the assessor made the assessment, only leaving out that which was improper.   Again, it is said the company is not liable because no notice was served as required by section 7.   That section is intended clearly only as a manner in which parties, who may have ore in their possession belonging to others, may be rendered liable for the tax on such ore.   It simply provides how the State shall secure the tax when ores are in the possession of parties other than the owners—a sort of garnishment alone.   Again, we are told that this tax cannot be collected, except when general taxes become delinquent,   In answer, we submit that "manner" does not mean "time," and that there is nothing in the suggestion.

*L. A. Buckner,* Attorney General, and *T. W. Healy,* also for Respondent.

The act of 1871 gives the form of the assessment roll in addition to prescribing clearly the facts to be stated in it. The act in relation to money of account and interest (Stats. 1861, 99) provides that the money of account of this State shall be the dollar, cent, and mill; but as section 3, in judgments, decrees, etc., rejects less than a cent, it follows that there can be but two columns; and the enumeration of figures being a matter of science, the court will take judicial notice of the fact that in money columns the enumeration is from the right to the left; that units and tens are cents; and hundreds, progressing in the same direction, are dollars. Hence in the books of account in the State treasurer's and controller's offices, there are no dollar marks.   The same is true of the banks, etc.   By examination of the ruled form in the second section it will be seen that all the columns save the first and second are columns of value; therefore, that by dividing these it is a neat and convenient way book-

keepers have of showing. dollars and cents without defacing the book with as many dollar and cent marks as there are items. The objection proceeds on the assumption that the dollar mark can only be made thus ($) but such is not the fact; on the contrary, the universal custom in the offices named, in banks, in commercial houses, etc., is to rule and keep their books by ruling dollar and cent columns.

In the California cases quoted the form of the assessment roll is given in the report of the case; and it will be observed there are no dollar or cent columns, and no dollar marks; hence it is amenable to the objection; but the cases are not in point, for the reason that the roll here is different.

Again, the delinquent list has the dollar mark to every column, but in the last line it is only placed before the sum total of the addition of the whole line. It is very evident that you can only make dollars and cents by the addition of dollars and cents; and the result shows conclusively that all the figures in these two columns are dollars and cents as they are respectively placed. A similar question was decided in *People* vs. *Empire G. & S. M. Co.*, 33 Cal. 171.

*H. Mayenbaum*, for Appellants, in reply.

If there is any necessity to show authorities sustaining the decision of California on this question of dollar mark it will be sufficient to cite the case of *Woods* v. *Freeman*, where the same question was similarly decided in the Supreme Court of the United States. 1 Wallace, 398; see also 20 Ill. 341; 21 Ill. 147.

It is however claimed that the question is avoided because the pleadings show the value of the ores. But it will be seen that the answer specifically denies each and every allegation in the complaint, and it was therefore necessary to introduce in evidence the delinquent list, and this list could not be used in evidence according to the decisions cited. The assessment roll and delinquent list are the foundation of the tax; and if these lists fail to show what the tax is they cannot be used in evidence in a suit against a citizen or taxpayer to enforce an imaginary tax or assessment.

By the Court, GARBER, J. :

This action was instituted to recover the tax assessed on certain ores, under the provisions of the act entitled "An act providing for the taxation of the net proceeds of mines," approved February 28, 1871.   The ores were extracted by the appellant during the quarter commencing January 1, 1871. The gross yield thereof was between thirty and one hundred dollars per ton, and (it will be assumed) they were worked by Freiburg, or dry process.

The appellant contended that the assessment should be made as follows : "From the gross yield of the ore, deduct the actual cost of extraction, reduction, etc.; or, if this exceeds sixty per centum of the gross yield, only deduct this percentage—then, from the remainder, deduct the additional exemption of fifteen dollars for each ton, and the remainder is subject to taxation."   But the court decided that the maximum of deductions to be allowed is obtained by adding to sixty per centum of the gross yield fifteen dollars for each ton ; and that subject to such maximum, the actual cost of extraction, etc., is to be deducted from the gross yield, the remainder being subject to taxation; consequently, as in this case the actual cost did not exceed sixty per. cent. of the yield, no portion of the asserted exemption of fifteen dollars per ton was allowed.   We are clearly of opinion that the decision was correct.

The section of the statute upon the construction of which the decision depends, so far as it applies to ores of this description, enacts that all ores shall be assessed as follows : From the gross yield, there shall be deducted the actual cost of extraction, transportation, and reduction or sale ; and the remainder shall be deemed the net proceeds, and shall be assessed and taxed; *provided*, that in no case whatsoever shall the whole amount of deductions allowed to be made in this section from the gross yield exceed sixty per centum of such gross yield ; *provided*, that an additional exemption of fifteen dollars per ton may be allowed on all ores worked by Freiburg or dry process.

The intention of the legislature, the thought which this section expresses, is obvious. First, to tax the gross yield, less the actual cost; and, second, to limit a maximum, beyond which not even actual cost should be deducted. The grade of the ore and the nature of the process are material only as a means of arriving at what are to be deemed the net proceeds, to tax which is the avowed object. So, in fixing the limit of deductions, so as to approximate as near as might be the actual cost, these considerations became important; and, consequently, this limit was arranged on a sliding scale, varying with the grade of the ores and the nature of the process. It was so arranged because, and only because, experience had shown that the cost of reduction usually varies according to the same conditions. There is no more propriety in allowing the fifteen dollars per ton to be deducted, without regard to the actual cost, than in allowing the sixty per cent. to be so deducted.

It is argued for the appellants, that: "The question is whether the last proviso means in fact an exemption. The words, *additional exemption* of fifteen dollars, certainly imply that there are some other exemptions; and, if we can discover these, the section is free from ambiguity. With Webster's definitions of "exempt" and "exemptions" in view, it is clear that the sixty per centum is not an exemption, but is a limit upon the exemptions made by the deductions for extraction, etc.—not being an exemption, the fifteen dollars cannot, with propriety, be coupled with it as an *additional exemption;* and it follows, therefore, that the fifteen dollars is an exemption *additional* to those allowed to be made for the extraction, transportation, and reduction or sale of the ores." This is ingenious, but, we think, too partial and refined. According to Webster, "to deduct" may mean the same thing as "to exempt"; and whatever is deducted under the provisions of the statute, is *ipso facto* exempted or freed from the burden of taxation.

The enacting clause of the section is, that from the gross yield there shall be deducted the actual cost. This is the leading idea of the statute—the general rule proposed. The

office of a proviso is to except something from the enacting clause, or to qualify or restrain its generality. *Per* Story, J., 15 Pet. 445. The last clause or proviso cannot be read as if it were a substantive and distinct enactment. The statute is as if it read: "From the gross yield the actual cost *shall* be deducted, subject however to the two following qualifications and exceptions, viz: such deduction shall not exceed sixty per centum of such yield, unless the ore is worked by dry process, in which case, an additional deduction of fifteen dollars per ton *may* be made." The proviso does not abrogate the rule adopted by the enacting clause, but merely qualifies the generality of that rule, which otherwise would have allowed the deduction of the cost without regard to its amount. Whatever is deducted over and above the sixty per centum, is surely a deduction additional to that allowed to be made on ores worked by wet process. It is an additional exemption—an exemption of another portion of the actual cost.

The actual cost *must* be deducted, except as the statute otherwise expressly directs. By adding the sixty per centum to the fifteen dollars per ton; or, by adding to the amount allowed for wet process, the additional amount allowed for dry process, we get the amount which *may* be allowed on ores worked by the latter. Below this limit, there is nothing in the statute forbidding the deduction of actual cost. Above it, the deduction of even actual cost is expressly prohibited. While the sixty per centum is, in one sense, a limit upon the exemptions allowed in all cases where the excepted process is not used, so equally is the fifteen dollars per ton a limit upon the additional exemption allowed in that specified case. In another sense, the sixty per centum may as well be termed an exemption of sixty per centum, as the fifteen dollars per ton, an exemption of fifteen dollars per ton. For wet process is allowed an exemption of sixty per centum; for dry, an additional exemption of fifteen dollars per ton—the exemption consisting of actual cost in the one case, as well as in the other.

On the trial, the plaintiff offered as evidence portions of the original and delinquent quarterly assessment rolls. The defendant objected to their introduction on the ground, "that there are no dollar marks placed to the figures and numbers purporting to indicate the amount of the tax due or assessed, or to any figures or numbers therein, and that it has no other marks indicating what is meant by those figures or numbers." The evidence was received and an exception taken. In support of this exception several authorities are cited. In *Lawrence* v. *Fast*, 20 Ill. 338, a judgment for taxes was offered in ejectment. It was rejected on the ground that it did not show the amount of tax for which it was rendered—that the use of the numerals without some mark, indicating for what they stand, is insufficient. The court said there was no mark, sign, or abbreviation in any way connected with the figures showing for what they stood. The figures were 2 48, written in a column headed "total." Breese, J., dissented, saying: "The form pursued by the collector is precisely the form given by the statute, and so is the entry of the judgment. It is certain to every ordinary intent that the figures in the proper columns indicated cents or dollars and cents. The most common man would so understand them, and would not be misled by them. The figures '2 48' must, of necessity, mean two dollars and forty-eight cents, or two hundred and forty-eight cents, which is the same. Mills are never expressed in that way. Courts of justice must draw the same conclusions from the same facts which the mass of the community would draw from them. Taking the columns with their headings and the figures in them as they stand, can any reasonable man doubt that dollars and cents or cents only were intended? I think not. It is not certainty to every intent in particular that is required in such proceedings, but common certainty." In 31 Cal. 132, the rule established in 20 Ill. was followed and applied to a case where the assessment roll was offered to sustain a suit for taxes. There, in a column headed "valuation," was written "101,937 18." The court

3

say: "It is necessary that there should have been a tax assessed, and that the amount be ascertained, otherwise there is no basis for a judgment to rest upon; that if the assessment is so defective that the court cannot determine what is intended, it is insufficient as evidence to authorize a judgment : that a 'valid assessment' is the foundation of all subsequent proceedings." The same has been held in other California cases, all resting avowedly on the authority of the case in 20 Ill., and cases in 21 and 23 Ill. to the same effect. *Woods* v. *Freeman*, 1 Wallace, 398, also holds that a judgment for taxes similar to that rejected in 20 Ill. cannot be introduced in ejectment. The decision is expressly placed upon the ground, that the validity of the judgment depended upon the construction of an Illinois statute, and that, therefore, the interpretation already given to the statute by the highest judicial tribunal in that State must be followed.

By another statute of Illinois, one holding a colorable title to land might perfect it by continuing in possession for seven years, and also, during that period, paying "all taxes *legally assessed* on that land."

In *Chickering* v. *Faile*, 38 Ill. 342, one of the parties claimed title by such a payment. It was objected that the taxes so paid, had not been legally assessed, because there was no word or character, annexed to the valuation, to indicate the sum in dollars and cents. The question presented was, therefore, whether such is a *legal or valid assessment*. The court say, referring to their earlier decisions above cited: "In a proceeding to divest title by summary action, it has been held that such a defect in the judgment for the taxes rendered the sale void. But this is a different question. We are not prepared to hold that such an assessment is void, as, if it is, all the acts performed under the assessment would render the officers wrong-doers, and subject them to an action for taxes collected on the assessment, and the collector a trespasser for distraining property for the collection of such taxes. We do not regard this omission as rendering the assessment illegal, nor the tax extended

upon it, although there may have been nothing but the numerals to indicate its amount. We are not disposed to apply the want of a word or character to the numerals, to indicate the sum of taxes due, as a defect to anything prior to the application of the collector for a judgment against delinquent lands, and would not even apply it to the judgment, were it not that the judgment must find the sum for which it was rendered. To all of the proceedings prior to the judgment for taxes, all persons know what the numerals represent, the amounts, and act upon them accordingly. And persons might so understand in a judgment; but we understand the law to be inflexible, that the judgment must, in terms, find the sum due."

*Elston* v. *Kennicott*, 46 Ill. 202, presented the same question, and it was again affirmed that the want of the dollar mark is no defect to any matter or thing prior to the application for judgment. In this case, the taxes were paid for six of the seven years, and the excuse for the failure to pay the assessment levied during the remaining year was, that the taxes for that year were not legally assessed—the roll not containing the dollar mark.

We have set forth all the authorities bearing on this question, to which our attention has been called, because there is much in them which goes far to justify the confidence with which counsel has pressed this assignment. Upon principle, we think, the opinion of Judge Breese presents the more reasonable and common sense view of the question, especially as applied to the facts of this case. In the rolls admitted in evidence, the columns headed, "gross yield," "actual cost of extracting," etc., "total cost," "amount deducted," etc., "net yield," etc., and "total amount of tax," are each divided into two unequal spaces by ruled lines; the smaller space, on the right, being of the size to admit two figures, and containing throughout the roll only two figures on each line, while the larger space contains from one figure up to six, being evidently so ruled as to admit any number of figures likely to be called for to express the number of dollars in the largest assessments. By our statute (1861, p. 99)

it is enacted that the money of account shall be the dollar, cent, and mill, and that all accounts in the public offices, and other public accounts, shall be kept accordingly, and that no proceeding shall be considered erroneous because the amount is computed in dollars and cents, omitting the mills. The form of the assessment roll, given in section 2 of the statute in question, also shows that it was contemplated that the amounts should be computed in dollars and cents only.

As matter of experience and habit, we also know that mills are usually disregarded in all these proceedings. The fair and reasonable presumption, in the absence of anything in such a roll as this to show the contrary, is that the figures in the smaller subdivision of the columns indicate cents, and those in the larger, dollars. The addition of the dollar mark would not make this more apparent. A sum of money, of course, is taken to be intended. By the statute of 1861 this can only be dollars, cents, and mills. The subdivision of the columns and the manner in which they are filled up unmistakably point to the rejection of one of these three denominations. Mills alone can be so rejected without rendering the proceeding erroneous. It was perfectly proper and legal for the assessor to omit these, and he is presumed to have done his duty.

Upon authority, it cannot be claimed that either doctrine has become settled law by the rule of *stare decisis;* or that, against our sense of right, we are bound to follow these recent and not altogether consistent or harmonious adjudications of two of our sister states—and, perhaps, the most that can be claimed is a conflict. The cases cited all purport to follow the Illinois ruling, and according to that, as explained in the later adjudications, it was proper, in making up the delinquent list, for the officer to assume that the numerals on the original roll represented dollars and cents, and to act upon them accordingly, by so designating them in the former. The delinquent roll is sufficiently explicit in this respect, according to all the authorities. See 33 Cal. 171. The dollar mark is prefixed to all the money columns, except the last headed "total amount of tax," and even that

is footed up and the mark prefixed to the sum total. The delinquent roll, by the express terms of our statute, was all the plaintiff need have introduced to make out a *prima facie* case. The introduction of the original roll, though unnecessary, did not, under the Illinois doctrine, destroy this case, for it proved a *valid assessment*, and so went to sustain the delinquent roll which furnished sufficient legal evidence to enable the court to determine with certainty the amount for which judgment should be rendered.

There is nothing in the point that the assessor was bound to assess the ores in conformity with the statement furnished him by the superintendent of the defendant. The only deductions entitled to a place in the statement were, by the express wording of section 2, those relating to actual cost. Matters inserted in the statement, the insertion whereof is not authorized by the statute, go for nothing. Besides, the deduction of fifteen dollars per ton made in the statement, only amounts to the superintendent's construction of the statute, and his assertion of a corresponding claim to exemption. If this is to govern, much time has been wasted in construing the statute.

The notice in writing, required by section 7, is not a prerequisite to the liability of the defendant to the tax. Such notice is only necessary to hold a party reducing ores, extracted by others, to the extent of the value of the ores in his possession when notified. Equally untenable is the position that the tax cannot be collected quarterly. As counsel say, the word " manner," in section 10, does not mean "time."

We do not see how the record can be construed as showing that the cost of extracting, transporting, and reducing the ores exceeded sixty per cent. of the gross yield, or that the appellants made any such claim. The answer expressly admits and avers that said cost was sixty per cent. of such yield; and, though the statement of the superintendent gave the cost as *exceeding* the sixty per cent., there is no showing anywhere how much the excess was, and, of course, no claim could have been based thereon.

The judgment and order appealed from are affirmed.

By WHITMAN, J., specially concurring:

As I read the record in this case, the cost of extracting, transporting, and reducing the ores of appellants exceeded sixty per cent. of the gross yield; so they claimed a further deduction, or, in the words of the statute, "additional exemption," of fifteen dollars per ton, because the working was by dry process. This claim was disallowed by the district judge, as I understand the decision, upon the ground that no allowance could legally be made beyond sixty per cent. of the gross yield; holding the percentage specified in the statute to be in this case, as in every other, the maximum of deductions. This view I believe to be correct; and so concur in the judgment.