HALEY v. ELLIOTT.

1. TAX WARRANT.

A tax warrant is not invalid because it does not run in the name of "The People of the State of Colorado," as judicial process is required to do. *Haley v. Elliott*, 16 Colo. 159, approved.

2. REVENUE LAWS—DEFECTS.

Informalities in complying with the requirements of the revenue laws of this state, do not render proceedings for the collection of taxes illegal; defects in form in any assessment list or tax roll may be corrected by the assessor or treasurer; our laws are purposely framed so that technical objections without merit shall not interfere with the collection of the public revenue.

3. ERRORS WITHOUT PREJUDICE.

The rejection of evidence which if admitted would not have improved the case of the party offering it, is not such error as should reverse the judgment.

Where in an assessment roll there is a defective description of the realty, the validity of the tax against the personalty is not necessarily affected.

4. DEFECTS IN ASSESSMENT ROLL.

Where in the copy of an assessment roll the dollar mark ($) was omitted before the valuation figures; *held* that it was one of those omissions or informalities which the assessor or treasurer is authorized to correct.

5. COUNTY TREASURER'S BOOKS.

Under the statutes of this state in 1884 the county treasurer's books (the tax roll or warrant) were the final repository of the work of assessment and levy of taxes, and a certified copy of the same was evidence *prima facie*, of the taxes so levied; the original roll of the assessor was, also, competent evidence to a certain extent, but its rejection was not reversible error where it did not tend to impeach the tax roll or warrant already before the court.

*Error to the County Court of Larimer County.*

ACTION of replevin for two horses. Judgment for defendant. Plaintiff brings error.

Mr. W. T. HUGHES, Mr. G. Q. RICHMOND and Mr. L. C. ROCKWELL, for plaintiff in error.

Mr. H. B. JOHNSON, Mr. D. E. PARKS and Mr. JOHN M. BREEZE, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This cause was first brought to this court by appeal. See *Haley v. Elliott*, 16 Colo. 159, where the facts and legal questions involved in the controversy are briefly stated. The appeal to this court being dismissed without prejudice, the cause was again brought here by writ of error. A motion to dismiss the writ was strenuously contested, but was finally denied (*ante*, p. 199), and the cause now stands for review upon the record as presented.

The evidence presented shows that Haley, plaintiff below, was the original owner of the horses in controversy, and that defendant, Elliott, bought them from the treasurer of Routt county at a tax sale. Breeze, the county treasurer, testified that he sold the horses to satisfy a tax for 1884 due from Haley to Routt county, the tax being due and unpaid at the time of the sale.

The evidence introduced at the trial contains "an exemplification from the abstract of the assessor's roll of Routt county, together with an exemplification of the precept or warrant issued by the board of county commissioners to the treasurer of Routt county to proceed and collect the taxes for the year 1884." Thus, it was shown, among other things, that the value of personalty assessed against Haley was $170,520; lands and improvements, $3,780; value of improvements on public lands, $800; total tax, $4,248.59. To these exemplifications certificates were attached as follows:

"STATE OF COLORADO, ⎱
COUNTY OF ROUTT. ⎰ *ss.*

"HAHN'S PEAK, Nov. 1, 1884.

"To the Treasurer of Routt County, Greeting: You are hereby commanded to collect the foregoing taxes levied by state and county authorities for the year 1884 as required by law, and this shall be your warrant therefor.

"Witness my hand and official seal this first day of November, A. D. 1884.

"(Seal)　　C. BRANDEGEE, County Clerk.

"By I. G. VOICE, Dpt."

"OFFICE OF THE COUNTY TREASURER ⎱
OF ROUTT COUNTY, COLORADO. ⎰

"HAHN'S PEAK, COLO., May 30, 1887. ·

"I do hereby certify that the foregoing statement and warrant for the collection of taxes for the year A. D. 1884 is a true and correct copy of the entries made upon the tax roll, list and books of my office showing the taxes due from *Ora Haley* for the year A. D. 1884, in the county of Routt and state of Colorado, as appears in my office, and the warrant hereto attached is a true and correct copy of the tax warrant attached to said list, roll and book issued to me as treasurer of said county for the year A. D. 1884.

"L. H. BREEZE,

"Treasurer Routt County, Colo."

1. The objection that the precept or warrant did not run in the name of the people, and so did not constitute "due process of law," was disposed of on the appeal of this case. See *Haley v. Elliott*, 16 Colo. 159.

2. Counsel for plaintiff at the outset of his argument states and relies upon the rule that "specially delegated power must be strictly pursued;" and, also, that "special statutory power must be strictly pursued." He claims that the assessment roll introduced in evidence does not comply with the form prescribed by the statute (Gen. Stats., sec. 2865). This argument would have some force were it not that the language

of the statute is that the tax "list *may* (not shall) be in the following form;" and, again, in sec. 2866, "no informality in complying with the above requirements shall render any proceedings for the collection of taxes illegal."

It is objected that the assessment roll does not show the name of Ora Haley in the proper column as prescribed by the statute. But sec. 2926, Gen. Stats., provides as follows: "Omissions, errors or defects in form in any assessment list or tax roll, when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time before the return of the assessment roll to the treasurer, or *by the treasurer at any time after the receipt of the said roll by him.*" * * *

See, also, sec. 2882, where it is said: "The treasurer, on receiving the tax list and warrant, shall proceed to collect the tax therein levied, and the list and warrants shall be his authority and justification against any illegality in the proceedings prior to receiving the list." * * *

These and other provisions of our revenue laws clearly show that the rules contended for by appellant have no application in a case of this kind. These rules were purposely framed so that technical objections, without substantial merit, should not interfere with the collection of the public revenue.

3. An exemplified copy of the assessment roll of Routt county for 1884, duly certified, was offered in evidence by plaintiff. On objection, it was rejected by the court. Neither the ground of objection to such copy, nor the reason for its rejection, appears in the record. Assuming that it was improperly rejected, the error was not such as should reverse the judgment. In one respect the copy offered by plaintiff supplied the deficiency in the copy introduced by defendant; it showed the name of Haley in the proper column. The description of the lands assessed, as shown by plaintiff's copy, was, however, fatally defective. "Six $\frac{1}{4}$ sections" was the entire description. This description might, however, be corrected at any time by the assessor or treasurer by virtue of the statute. But, whether corrected or not, the defective

description of the realty did not affect the validity of the tax against the personalty. Most of the property assessed was personalty, and it will not be presumed, in the absence of evidence, that the two horses were sold to apply on other than the tax against the personalty. *Genther v. Fuller*, 36 Ia. 604; *Upton v. Kennedy*, 36 Mich. 215; *Wilson v. Seavey*, 38 Vt. 221.

4. In the copy of the assessment roll offered by plaintiff the dollar mark ($) was omitted before the valuation figures. In other respects it did not differ substantially from the copy introduced by defendant. It is contended that this omission vitiated the assessment. Not so. It was just one of those omissions or informalities which the statutory provisions above quoted were designed to cure. The treasurer, as well as the assessor, was authorized to correct such errors and omissions at any time; and in view of the copy introduced, and in the absence of evidence to the contrary, we may well presume that after plaintiff's certified copy was obtained, these omissions were corrected.

In *Chickering v. Faile, Ex'r et al.*, 38 Ill. 342, it was held that "assessment rolls, warrant, or other proceedings prior to the judgment for taxes are not rendered invalid or illegal by reason of the absence of a word or character to the numerals, designating the amount of the valuation or the taxes." See, also, *State v. Eureka Con. M. Co.*, 8 Nev. 15.

Counsel for defendant in argument have called attention to certain matters of which this court may take judicial notice, since they appear upon its records: The tax in controversy in this cause is against the same party (Ora Haley), is for the same year (1884), and for the same amount ($4,248.59) as the tax in controversy in the cases of *Breeze, County Treasurer, v. Haley*, 10 Colo. 5, and *Breeze, County Treasurer, v. Haley*, 11 Colo. 351. Counsel for plaintiff does not in his reply brief, nor at all, deny these matters. We are constrained to conclude that plaintiff has no legal or equitable ground to complain of the taxes assessed against him. As was pertinently said by Mr. Justice Elbert in

the case last above cited, after reviewing for a second time the objections to this very assessment of taxes against Haley: " The whole proceeding in this case appears to us to be an unwarranted attempt to have matters readjudicated which have already been decided against the plaintiff, and to further harass the authorities of the county, and delay the collection of its revenue."

In *Waddingham v. Dickson*, 17 Colo. 223, Chief Justice Hayt has clearly expressed the modern doctrine upon this subject, as follows : " The payment of taxes is a duty which property holders owe to the government. If they neglect this duty they have no right to expect relief from the courts on account of merely technical errors on the part of the public officers, where no substantial right has been lost or impaired." This was said in a case involving the sale of real estate for taxes. Certainly, a more stringent rule is not required in case of a tax sale of personal property.

Meritorious objections affecting substantial rights, when properly made to appear, should always be heeded ; but mere hypertechnical objections should not be countenanced in the administration of justice. Such is the trend of modern legislation, and such should be the aim of judicial decisions.

The judgment of the county court will be affirmed.

*Affirmed.*

### ON PETITION FOR REHEARING.

1. Further argument was allowed before the court upon petition for rehearing. It was again urged that the omission of the dollar marks in the assessment roll invalidated the assessment, and that in the former opinion sufficient consideration was not given to this point. This court examines with care the briefs and arguments of counsel, but cannot undertake that all authorities cited shall be discussed or set forth in the opinion filed.

*Lawrence v. Fast*, 20 Ill. 338, fairly states the rule contended for by counsel for appellant, though Mr. Justice

Breese (the court consisting of three judges only) dissented in the following terse language:

"It is certain to every ordinary intent, that the figures in the proper columns indicated cents, or dollars and cents. The most common man would so understand them, and could not be misled by them. The figures '2 48' must of necessity mean two dollars and forty-eight cents, or two hundred and forty-eight cents, which is the same. Mills are never expressed in that way. Courts of justice must draw the same conclusions from the same facts which the mass of community would draw from them. Taking the columns with their headings, and the figures in them as they stand, can any reasonable man doubt that dollars and cents, or cents only, were intended? I think not. It is not certainty to every intent in particular that is required in such proceedings, but common certainty."

In *Elston v. Kennicott*, 46 Ill. 187, as well as in *Chickering v. Faile*, cited in our former opinion, it was held that "the want of the dollar mark in the assessment roll, to designate the amount of the valuation or the taxes, will not render the assessment, or the collector's warrant, invalid and illegal." It is claimed that the *Lawrence-Fast Case* is not overruled by the *Chickering* and *Elston Cases*, because issues of a different nature were involved; but the latter cases certainly militate strongly against the correctness of the former. In *People v. Savings Union*, 31 Cal. 132, the earlier Illinois cases were followed.

In *Sawyer v. Gleason*, 59 N. H. 140, it was held that "figures separated by a decimal point, in the ordinary method of writing dollars and cents, with no other mark, are understood in the sense indicated by the point, the context, and the subject-matter."

*State of Nevada v. Eureka Con. Min. Co.*, 8 Nev. 15, seems to have been thoroughly considered, and the court held: "In an action to recover delinquent taxes on the net proceeds of mines, where plaintiff was allowed to introduce in evidence the original assessment roll, notwithstanding there was no

dollar mark attached to the figures purporting to indicate
the amount of the tax due or assessed, and it was objected to·
on that ground: *Held*, that the fair and reasonable presump-
tion, in the absence of anything to show to the contrary, was
that the figures, disposed in perpendicular columns in the
form prescribed by statute, indicated dollars and cents, and
that the admission of the roll in evidence was not error."
See, also, *Jenkins v. McTigue*, 22 Fed. Rep. 148; *City of
New Orleans v. Day*, 29 La. Ann. 417; *Chamberlain v. Taylor*,
36 Hun (N. Y.), 24, and cases there cited.

2. It is again insisted that the original assessment roll
made by the county assessor is the primary and exclusive
evidence by which the legality of the tax complained of
should have been tested. As indicated in our former opin-
ion, such roll, or a duly certified copy thereof, is competent
evidence to a certain extent in case the validity of a tax is
material to the issue; but such evidence is not necessarily
exclusive or conclusive of the validity of the tax. The orig-
inal assessor's role, as it leaves his hands, does not show any
tax at all, but only the property listed and its valuation, and
these are subject to changes, as our revenue laws clearly
show.

When this controversy arose, it was necessary to consider
several statutory provisions, and also other records than those
of the assessor, in order to determine whether a tax in a given
case was legal or illegal. The assessment and levy of taxes
was not the work of a single officer, but the combined work
of several. The work commenced with the lists returned to,
or made by, the county assessor, but it might end with amend-
ments and additions thereto made by the county treasurer,
s well as by the taxes extended thereon by the county clerk.

The following references are to General Statutes of 1883,
as that volume contains the laws in force when this contro-
versy arose. Passing by those sections relating to the list-
ing of property for taxation, it will be found that the assessor
was required to make out and deliver to the county clerk
annually an assessment book or roll containing in tabular

form names of persons, property, and valuation thereof as listed, etc. Sec. 2856.

The assessor and clerk were required to carefully compare the various items in the assessment book at the time it was returned to the county clerk, and to promptly correct all errors and omissions found therein. Sec. 2858.

Section 2875 provided that the county commissioners, as a board of equalization, should have power to supply omissions in the assessment roll, and for the purpose of equalizing the same, might increase, diminish, or otherwise alter or correct any assessment or valuation.

By section 2871 it was provided that the commissioners should, by order entered of record among their proceedings, levy the requisite taxes for the year for school and other county purposes as required by law.

As soon as practicable after the taxes were levied, the county clerk was required to make out a tax list, *in a book provided by the county*, in alphabetical order, with columns for names of owners, description and value of real estate, value of personal property, total amount of taxes, etc. The statute prescribed the form in which such tax list might be made. Sec. 2865.

Section 2866 provided that the clerk should attach to the tax list his warrant, under his hand and official seal, requiring the treasurer to collect the taxes therein levied according to law ; and further, that *no informality in complying with the above requirements should render any proceedings for the collection of taxes illegal;* that the clerk should deliver such list to the treasurer by the first day of November, or as soon thereafter as practicable ; and that such list should be sufficient authority for the treasurer to collect all taxes contained therein.

Section 2886 provided that if on the assessment roll or tax list there should be any error in the name of a person taxed, the name might be changed and the tax collected from the person intended, if he were taxable and could be identified by the *treasurer* or assessor.

Section 2922 provided that *in all entries* required to be

made by the *assessor, county clerk, treasurer,* or other officer, in *lists, books, rolls,* certificates, receipts, deeds or notices, *letters, figures* and *abbreviations* might be used to denote townships, ranges, sections, parts of sections, lots, blocks, dates and *amounts of taxes,* interest, penalties and costs.

Section 2837 was such a broad statute of *jeofailes* in favor of the validity of *every assessment made against property subject to taxation* that we hesitate to quote it; and no opinion is ventured as to its proper construction in a case where its application may become necessary. It provided, among other things, that "no irregularity, error or omissions in the assessment of any property, or in the levying of any tax, shall affect in any manner the legality of any taxes levied thereon." The act of 1889, p. 321 (Mills,' sec. 3790), is only slightly different.

Section 2926 authorized the *treasurer,* at any time *after* the assessment list or tax roll was received by him, to correct any omissions, errors or defects in *form* therein when it could be ascertained therefrom what was intended.

Section 2908 authorized the *treasurer* to *assess and tax property omitted from the tax list,* and further provided that the taxes so *levied and assessed by the treasurer* should be as valid for all purposes as if the assessment had been made by the assessor.

The treasurer's certificate of the amount of taxes levied upon personal property, and that the same has not been paid, was made *prima facie* evidence that the amount claimed was due and unpaid in any suit brought by the county treasurer to recover such tax of the person so taxed. Sec. 2819.

By section 2950 it was further provided that entries made in the *county treasurer's books,* the assessment rolls, and the warrants thereto attached, or a certified copy thereof, should be *prima facie* evidence in all judicial proceedings and in all courts in this state.

So the Code of Civil Procedure, sec. 422, provides that a copy of any record or document or paper in the custody of a public officer in this state, duly certified under his official

seal, may be read in evidence in an action or proceeding in the courts of this state, in the like manner and with the like effect as the original could be, if produced.

The foregoing is no new rule of evidence. It is practically the common law rule in respect to official registers and other public writings required by law to be kept by public officers. 1 Greenleaf's Ev., sec. 483, *et seq.*; 1 Wharton's Ev., sec. 640, *et seq.*

The case of *Ronkendorff v. Taylor's Lessee,* 4 Pet. 358, by the supreme court of the United States, is clearly in point. The following is from the opinion of the court delivered by Mr. Justice M'Lean:

"Did the court below err in requiring the original assessment lists to be produced?

"These lists, under the law, were not conclusive on the corporation, or on the person whose property was assessed. They were laid before the court of appeal for their correction and sanction, and they were then passed to the register.

"If the assessment was not conclusive, or indeed binding on either party until sanctioned by the board of appeal, then, without this sanction, the assessment lists could not be received as evidence. These lists being handed over to the register, the law requires him to furnish a tax-book to the collector, from the original assessment lists on file in his office, according to a prescribed form. This was done in the case under consideration; and is not this book evidence?

"It was made out and arranged by an officer, in pursuance of a duty expressly enjoined by law. *This not only makes the tax-book evidence, but the best evidence which can be given of the facts it contains.* In this book are stated the name of the owner of the property, and his residence, if known; the number of the square, the number of the lot, the square feet it contains; the rate of assessment, the valuation and the amount of the tax. Only a part of these appear upon the assessment list."

From the foregoing survey of the statutes as they existed when this controversy arose, it appears that the tax list, the

tax roll, the tax warrant, as it was variously termed in the revenue act, might comprise the work of several officials. The board of equalization might change the valuations; and after it was delivered to the treasurer, he might correct and add thereto when necessary. The statute made the treasurer's books, that is, the assessment rolls and the warrants thereto attached, after the same were thus made up and in his hands, competent evidence of the taxes assessed and levied by authority of law. It is true, the original papers in the hands of the assessor might also have been resorted to for certain purposes. The effect of such evidence, in case of substantial conflict between the books of the treasurer and the rolls of the assessor, is not involved in the present case.

No further discussion is necessary to show that the exemplification of the abstract of the assessment roll, together with an exemplification of the tax warrant, certified to by the treasurer of Routt county, was proper evidence of the validity of the tax in controversy. By such evidence a *prima facie* defense was established. The assessment roll, duly certified by the county clerk, was also competent evidence to a certain extent, but was not necessary to the maintenance of the defense. The assessment roll offered by plaintiff cannot be considered as evidence in this case, because not actually admitted, but it may, and must, be considered for the purpose of determining its tendency in case it had been admitted, and since it appears that it could not, if admitted, have had any effect against the defendant's evidence, its exclusion must be held to have been harmless error. It was properly admissible in rebuttal, but would have had no effect if it had been admitted in rebuttal, because it does not, considering our statutes, show any such informality, error, or omission as would have tended to invalidate the tax in controversy or to impeach the evidence, the tax roll or warrant already before the court. The property and figures in the abstract of the assessment roll certified to by the treasurer agree with the assessor's roll as far as they go, and are clearly a valid assessment in all substantial respects.

A brief comparison of the assessor's roll and valuations with the tax warrant certified to by the treasurer from the " tax roll, list and books " in his office, shows that no injustice was done to plaintiff.   The assessor's roll shows personal property listed and valued as follows :

| | |
|---|---|
| 165 horses . . . . . . . | 6845 |
| 2 mules . . . . . . .. . | 100. |
| 8200 cattle . . . . . . . | 163000 |
| 3 carriages . . . . . . . | 200. |
| Merchandise . . . . . . . | 200 |
| Amount of all (other) property . . . . | 175. |

The figures by which these several valuations were expressed were not separated by any unequal spaces, nor was there any point or other mark to indicate that they were intended to represent other than dollars, the ordinary units of value in our currency.   These figures aggregate 170,520, and this sum, with the dollar mark prefixed, exactly agrees with the " value of personalty " as shown by the tax warrant. See former opinion.   It is evident the treasurer treated the several valuations as dollars, and so supplied the omitted mark, as he well might do, if from the assessor's list he could ascertain what the figures were intended to represent.   Such was his express authority under the statute.   In supplying such omissions the treasurer was bound to exercise reason and sound judgment.   The figures obviously represented either dollars or cents.  Treating the figures as dollars, the horses were assessed at an average of a little more than forty-one dollars per head ; treating the valuation as cents, they would have been valued at a little more than forty-one cents per head.   By the same rule the mules were valued at fifty dollars per head.   Would it have been reasonable to have valued them at fifty cents per head ?   So the average value of the cattle was fixed at a little less than twenty dollars per head.   Would it have been reasonable to have valued them at less than twenty cents per head ?

We think the treasurer was warranted in supplying the

dollar mark as he did. In view of the statutes conferring power upon the treasurer to correct errors and omissions, and further providing that irregularities and informalities shall not render the assessment or levy of taxes illegal, it would be trifling with the laws of this state to interfere with the assessment and levy in this case. We are bound, under the evidence produced, to conclude that the assessment and levy of taxes as shown by the treasurer's books are correct; and the admission of the assessor's roll would not, in this case, as we have seen, have changed this conclusion. The treasurer's books were the final repository of the work of assessment and levy of taxes in this state, and the same were competent evidence, *prima facie*, of the taxes so levied.

It was urged in argument that the rule laid down in *Morris v. St. Louis Nat. Bank*, 17 Colo. 231, is variant from the views expressed in this case. But there is a clear distinction between the cases. In the *Morris Case* the tax was not declared invalid. It was the notice of the tax sale that was declared invalid; and thereupon it was held that an action to remove a cloud from the title to the land sold for taxes might be maintained upon the repayment to the purchaser of the taxes with interest, etc. The right to collect the government revenue was not at all interfered with by the decision in the *Morris Case*, though the original owner was relieved against the sacrifice of a large amount of land for a very small amount of taxes, because the notice of the tax sale was not in substantial compliance with the statute.

This case presents a subject that has been prolific of much legal and judicial controversy; but we forbear further discussion, as it is manifest that a different conclusion cannot be justly reached if the laws of the state be faithfully considered and applied.

The petition for a rehearing must be denied.

*Rehearing denied.*