THOMAS J. CHAMBERLAIN and Others, as Executors, etc., of BENJAMIN CHAMBERLAIN, Deceased, Plaintiffs, v. HASCAL L. TAYLOR and Others, Defendants.

*Power of sale — ceases when the object for which it was given is accomplished — tax sales — errors in assessment-roll — presumption that assessors have discharged their duties — execution of conveyances — 1850, chap. 298 — 1882, chap. 287 — power of the legislature to make deeds conclusive evidence of regularity—Const., art. 3, sec. 16.*

Where a testator by his will bequeaths and devises all his real and personal estate, not before specifically bequeathed and devised, to his executors in trust for the payment of the bequests and legacies thereinbefore specified, and for the purpose of executing such trust authorizes and empowers them to sell and convert all his real and personal estate into cash, and execute and deliver the necessary conveyances and assignments, the power of the executors to sell and convey real estate belonging to the testator ceases as soon as all the legacies and · bequests specified in the will have been paid and discharged.

In an action of ejectment the defendant set up a title to the lands under a deed executed by the county judge and county treasurer of Cattaraugus county, upon a sale for the non-payment of taxes. The deed was executed pursuant to chapter 298 of 1850, upon a sale made in December, 1853, for the non-payment of taxes levied in 1849. The lot in question and others were entered upon an assessment-roll containing the blanks and columns appearing upon the rolls then usually furnished to the assessors. Opposite to the description of the lot, and in a column headed " valuation," were the figures " 445." and in a column headed " tax," were the figures " 4.05."

*Held,* that the omission to express the value of the property and the amount of the tax more definitely in dollars and cents did not render the assessment and sale void.

*American Tool Company* v. *Smith* (32 Hun, 121; affirmed, 96 N. Y., 670) followed; and *Matter of Rector, etc.* (61 How., 315), not followed.

Section 26 of 1 Revised Statutes (3d ed.), 447, provides that " the assessors, or a majority of them, shall sign the assessment-roll, and shall attach thereto a certificate in the following form, which shall also be signed by them." The roll in this case was not signed by any of the assessors, but the certificate required by the act was *written* upon the roll — not attached thereto — and signed by them.

*Held,* that this was a sufficient signing of the roll to satisfy the requirements of the statute.

The evidence in this case tended to show that the original assessment-roll had been lost. What purported to be a copy of the roll was found on file in the town clerk's office, and produced in evidence upon the trial. This paper did not show that the original roll had been signed by the assessors.

*Held,* that, assuming this copy to have been filed in the town clerk's office by the

supervisor, as required by section 35 of 1 Revised Statutes (3d ed.), 449, the fact that it did not have upon it the signatures of the assessors, was not sufficient to overcome the legal presumption that the assessors had discharged their duties in accordance with the statute, and to prove that the original roll was not signed by them.

*Boyd* v. *Gray* (34 How, 323; *Bradley* v. *Ward*, 58 N. Y., 401) followed.

The certificate of the assessors stated that they had estimated the value of the real estate at a sum at which they " would appraise the same in payment of a just debt due from a solvent *creditor*."

*Held,* that the erroneous substitution of the word " creditor " for " debtor " did not vitiate the assessment.

A part of the taxes, for the non-payment of which the land was sold, were highway taxes. The roll did not give the number of the road district, or the date of the commissioner's warrant.

*Held,* that the roll was not required to state those facts.

Sections 32 and 33 of 1 Revised Statutes (3d ed.), 622, making lands of non-residents, occupied and improved by the owners thereof, or their agents or servants, liable to the same assessment for highways as if the owners were residents, was not intended to limit the provision of section 19 of the said statute, making the lands of all non-residents subject to such assessment, but simply to place the agents or servants of the owner occupying the lands upon the same footing in reference to liability for the tax as resident owners.

Section 48 of chapter 298 of 1850 requires the county treasurer, on or before September first, to make a list of the lands to be sold, and deliver the same to the printers or proprietors of certain newspapers, who are to publish the same for ten successive weeks prior to the commencement of the sale. In this case the notice sent by the county treasurer was dated September fifteenth.

*Held,* that the error was immaterial; that the provisions of the statute relating to the preparation and delivery of the notice were mandatory in so far only as to require it to be delivered in time to have it published for the ten weeks preceding the sale.

Section 83 of chapter 298 of 1850 provides that " the conveyance shall be executed by the treasurer and county judge of the county in which the land was sold, under their hands and seals, in such form as the comptroller shall direct." The record of the conveyance put in evidence was executed by the treasurer and county judge in their official capacity, and opposite to their names were the letters (L. S.).

*Held,* that it was properly executed, and that, as the county judge was authorized to take acknowledgments, and his official signature was entered in the clerk's office, the conveyance was properly recorded, though not acknowledged.

Chapter 287 of 1882 is entitled " An act to amend chapter two hundred and twenty-nine of the laws of eighteen hundred and seventy-nine, entitled ' An act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugus, and the acts amendatory thereof and supplementary thereto.' "

The second section of the act provides that " whenever a period of fifteen years has and shall have elapsed after the execution of any deed or conveyance heretofore

made, or which may hereafter be made by the comptroller of this State, or by a county judge and county treasurer, of lands of a non-resident owner or owners, lying in the counties of Chautauqua or Cattaraugus, pursuant to the sale thereof for or on account of any tax or taxes returned as unpaid, and the former owner, as claimant of said lands, his heirs or assigns, shall not have entered into actual possession of the same, or some part thereof, within that period, and made permanent and valuable improvements thereon, then every such deed or conveyance shall be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices heretofore or hereafter required by law to be given previous to the expiration of the time allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of all laws requiring or directing the same, or in any manner relating thereto."

*Held,* that the act embraced but one subject, which was expressed in its title, and that it did not violate section 16 of article 3 of the Constitution.

That it did not deprive the owner of any vested rights in property.

That it was constitutional and valid.

MOTION for a new trial made on behalf of the defendants, upon exceptions taken upon the trial, and ordered to be heard in the first instance at the General Term.

*E. D. Northrup,* for the plaintiffs.

*John G. Hall* and *D. H. Bolles,* for the defendants.

HAIGHT, J. :

This action was brought by the plaintiffs on behalf of Lorenzo F. Freeman, their grantee, to recover 156 acres of land situate in the town of Olean, Cattaraugus county ; the conveyance to Freeman having been made whilst the defendants were in possession of the premises, claiming under a title adverse to that of the plaintiffs. The defendants are in possession claiming title through certain deeds issued upon the sale of the lands for the non-payment of taxes. The plaintiffs' title is derived through the will of Benjamin Chamberlain, deceased. The will, after making certain devises and bequests, provides : "18th. I hereby further will and direct that all my estate not otherwise hereinbefore disposed of be divided into two equal parts, one of said parts to be paid to the Centenary Fund Society of the Erie Annual Conference of the Methodist Episcopal Church, to be by said corporation invested and kept permanently invested, and the interest and income thereof used and expended by said corporation for the benefit of Allegany College, at Meadville,

Pennsylvania, in such manner and for such specific purposes as said corporation shall direct, and that the other of said parts be paid by my executors to the trustees of the Chamberlain Institute, to be by said trustees permanently invested in bonds and mortgages upon productive farming lands in this State, such mortgages to be first liens. The said principal to be kept permanently invested, and the interest and income thereof to be received by said trustees and by them used in the payment of the salaries of tutors and professors employed to teach in said institute, and in purchasing books and apparatus for the library of said institute," etc. " 22d. I hereby further nominate and appoint as executors of this my last will and testament, Thomas J. Chamberlain, Amos Doll, Charles P. Adams and Alonzo Kent. And I give, bequeath and devise all my real and personal estate not hereinbefore specifically devised and bequeathed, to my said executors in trust for the payment of the bequests and legacies hereinbefore specified and ready to be paid; and for the purpose of executing such trust, I hereby authorize and empower them to sell and convert all my real and personal estate into cash, and for that purpose authorize them to execute and deliver the necessary conveyances, assignments and releases of the same," etc.

It will be observed that the devise to the executors is *in trust for the payment of the bequests and legacies hereinbefore specified,* and that the devise to the executors extends no further, so that when the bequests and legacies specified in the will are paid and discharged the trust of the executors terminates. They are also authorized and empowered to sell and convert the real and personal estate into cash; but this power of sale is for the purpose of executing the aforesaid trust, and when such trust is fully executed the power of the executors to sell terminates.

The provisions of this will have already received judicial construction in this court, and in the Court of Appeals, in an action brought for that purpose. In the judgment that was entered in that action, upon the decision of the Court of Appeals, it was held and adjudged that the real estate of Benjamin Chamberlain, which he held or owned at the time of his decease, descended to his heirs-at-law, subject to the execution of such of the valid and effectual provisions of the will as relate to or affect the same. It was

further held and adjudged that the Chamberlain Institute and the Centenary Fund Society of the Erie Annual Conference of the Methodist Episcopal Church could each take only a one-fourth part of the net estate of the testator; and that the right of such corporation to take one-fourth was further limited to the amount of the capacity of the corporation to take under its charter. Under this decree the executors settled and paid the various legacies and bequests provided in the will. They also settled and paid over to the Centenary Fund Society and the Chamberlain Institute the amounts going to them respectively, in full for the portion to which they were respectively entitled under the will, and took their receipts therefor in full; and thereupon the surrogate of Cattaraugus county, on a final settlement, ordered and decreed that the executors " be and they are hereby duly discharged of and from all further duties and liability on account of such estate."

Inasmuch as the devise to the executors was to the extent of the payment of the bequests and legacies specified in the will, and their power of sale of the real estate was limited to the purpose of executing the trust named, they having executed the trust and paid the legacies and bequests in full and been discharged by the decree of the Surrogate's Court, and in view of the judgment entered upon the decision of the Court of Appeals, to the effect that the real estate of the deceased descends to his heirs-at-law, subject to the execution of the valid provisions of the will effecting the same, we fail to discover any further right or power in the executors to sell or convey the real estate of the deceased that may remain after such settlement and discharge.

When this case was in the Court of Appeals upon the question of champerty, that court announced that this point appears to be serious and worthy of careful consideration, but inasmuch as it was not suggested on the trial or considered by the general term, and the complete provisions of the will not being before the court, it was left to be considered on a new trial. (Chamberlain v. Taylor, 92 N. Y., 348–352.)

Justice Daniels, the learned judge before whom this case was tried at circuit, in directing a verdict for the plaintiff, said that upon the points made the plaintiff's title cannot be sustained, but for the purpose of facilitating a speedy hearing of the case in the General

Term, he had concluded that it was advisable to direct a verdict for the plaintiffs, and order the exceptions to be heard in the first instance at the General Term.

Justice LEWIS, before whom another case between the same parties was tried, in which the plaintiffs' title was derived from the same source, writes an elaborate opinion, in which he reaches the conclusion that the executors had no title and could not maintain the action. In the views expressed in that opinion, we are of the opinion that we should concur, but in view of the fact that there are several other cases pending in this court, in some of which the title of the plaintiffs is derived through another source, we have thought it advisable to examine and consider the defendants' title.

The defendants' title is derived through a deed executed by Azariah C. Flagg, as comptroller of the State of New York, to John E. Hinman, dated July 29, 1845. This deed was executed and delivered upon a sale of the lands in question made in June, 1843, for the non-payment of taxes charged thereon. The defendants also claim through another deed executed by Chester Howe, county judge of Cattaraugus county, and Stephen McCoy, treasurer of the county, to John E. Hinman, dated January 25, 1855. This deed was executed on behalf of the people of the State of New York and delivered to Hinman upon a sale of the lands in question, made in the month of December, 1852, upon the non-payment of taxes charged thereon. The taxes for which this sale was made were levied in the year 1849. The title as derived through the latter deed is the only one which we shall here consider. The sale was made under and pursuant to chapter 298, Laws of 1850, and the authority of the county judge and treasurer to convey is found in that chapter.

It is contended in the first place that the assessment-roll for the year 1849 is void for the reason that neither valuations of the property nor the taxes are expressed in dollars and cents as is required by the statute. The lands in question upon such roll are described as non-resident lands in the town of Olean, as surveyed by Joseph Ellicott, for the Holland Company, and is described as lot 1, section 5, town 1, range 4, 356 acres; and in the column headed "valuation" are the figures 445, and carried out in the column under the head "tax" are the figures "4.05." This lot is entered

upon the usual blanks furnished at that time to the assessors, and
the valuations and taxes above and below the description of this lot
are entered in the same form.   This question has already been con-
sidered by the courts in numerous reported cases.   In Illinois,
Indiana and California the omission of the dollar mark has been
held to be fatal, whilst in more recent decisions in New Hampshire,
Nevada, Michigan, Nebraska, Missouri and Oregon, it has been
held to be of no importance, and that the court will assume that
where figures are used in the valuations of property in tax-rolls,
that they were intended to mean dollars, and that where they are
used in a column headed " tax," they were intended to mean
dollars and cents.   In our own State the question was first con-
sidered in *Matter of Rector, etc.* (61 How., 315), and in that case
it was held that where the valuation in an assessment-roll, is put
merely in figures, under the heading of value of real estate, with-
out anything to indicate whether they represent dollars or cents, the
assessment-roll was void.   This case, however, was disposed of
upon other grounds, and the question does not appear to have
received careful consideration by the court.   The decision was by
a divided court, the presiding justice dissenting.   The question
was again considered by the same court in the case of *The Ameri-
can Tool Company* v. *Smith* (32 Hun, 121), and appears to have
received more attention.   The conclusion was there reached that
the omission of the dollar mark did not invalidate the roll or
warrant.   And this case appears to be squarely in point.   The
designation over the columns of valuation and tax were precisely
the same as the one under consideration.   This case has recently
been affirmed in the Court of Appeals (96 N. Y., 670), and it must,
therefore, be controlling upon the question.   The statute provides
that the board of supervisors shall estimate and set down in a
fifth column, to be prepared for that purpose in the assessment-roll,
opposite the several sums set down as the valuation of real and
personal estate, the respective sums in dollars and cents, rejecting
the fractions of a cent, to be paid as tax thereon.   This statute
requires the tax to be set down in dollars and cents.   On this roll
the cents are separated from the dollars by the period which it is
the custom to use in writing federal money ; and when we find
figures in this form under the head of tax, we cannot well fail to

understand their meaning or what they were intended to express. (See dissenting opinion of BREESE, J, in *Lawrence* v. *Fast*, 20 Ill., 338; *Cahoon* v. *Coe*, 52 N. H., 525; *Raley* v. *Guinn*, 76 Mo., 263; *State* v. *Eureka Mining Company*, 8 Nev., 15–25; *First National Bank of St. Joseph* v. *St. Joseph*, 46 Mich., 528; *Lynam* v. *Anderson*, 9 Neb., 374; *De Lashmutt* v. *Sellwood*, 10 Oregon, 319.)

In the second place, it is claimed that the assessment-roll is void, for the reason that it is not signed by the assessors. The roll produced in court upon the argument of this appeal is not signed by the assessors at the end of the valuation of the property. There is, however, written upon it the certificate required by the statute in which the assessors severally certified that " we have set down in the foregoing assessment-roll all the real estate situate in the town of Olean," etc. This certificate is signed by the assessors. The statute in force at that time provided that " if no objections be made to their assessments, or immediately after the assessors shall have disposed of the objections, the assessors, or a majority of them, shall sign the assessment-roll, and shall attach thereto a certificate in the following form, which shall also be signed by them. Then follows the form of the certificate. (1 R. S. [3d ed.], p. 447, sec. 26.)

This statute was amended in 1851 by chapter 176, in which the assessors are required to make an affidavit instead of a certificate, which shall be written upon the roll and signed by the assessors. Under this amendment it does not appear that it is necessary for the assessors to sign the roll in any other place than at the end of the oath written thereon. The reason for the signing of the roll is to authenticate and identify it. It remains to be determined whether or not the requirements of the statute have been substantially complied with in this case. It will be observed that the certificate is written upon the roll, is signed by the assessors and thereby made a part of it. It is not upon a separate piece of paper attached thereto, as is permitted by the statute. In the examination that we have made we have been unable to find any reported case in this State in which this question has been raised or discussed. In the case of *Tonnele* v. *Hall* (4 Comst., 140) a will consisted of eight unfolded sheets of paper securely attached together at the ends, and the writing commenced on the first

sheet and was continued on the four succeeding sheets, where it was brought to a close by the usual attestation clause and subscribed by the testator and witnesses. On one of the sheets following the signature was a map not signed by the testator or witnesses. It was held that the will was subscribed at the end by the testator within the meaning of the statute, and that the execution thereof was valid. The learned judge, in delivering the opinion of the court, says: "It is a sound principle that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making it at other times from other circumstances. Whenever the intention can be discovered, it ought to be followed with reason and discretion in its construction, although such a construction may seem contrary to its letter." This case, in principle, we regard as covering the question under consideration. The purpose of the statute was to have the roll verified by the assessors by writing their names thereon, so that in the future there could be no question in reference to the identity of the roll. The writing of the certificate upon the roll, in which the roll is referred to as the "foregoing assessment-roll," and the signing of the certificate so written upon the roll as effectually identifies and authenticates it as it would if their names had been subscribed thereon a number of times.

In the case of *Lowe* v. *Weld* (52 Me., 588) the action was for trespass in taking and converting the plaintiff's cow. The defense was justification on a sale as collector for the non-payment of the plaintiff's tax. The only question presented was the sufficiency of the list committed by the assessors to the collector. The statute provided that the assessors shall assess, upon the polls and estates in their town, all town taxes, their due proportion of any city or county tax according to the rules in the then last act for raising the tax, and to make a perfect list *under their hands*, and commit the same to the constable or collector of their town with a warrant *under their hands*. The lists were not signed by the assessors. It was held that the commitment prefixed to and incorporated in the lists specifically referring to them, was a sufficient authentication and compliance with the statute. In the case of the *Inhabitants of Norridgewock* v. *Walker* (71 Me., 181), the doctrine held in the

case of *Lowe* v. *Weld* was quoted approvingly. In the case of *Bailey* v. *Ackerman* (54 N. H., 527), the question was as to the validity of a tax list. The statute in this State required a list of all taxes to be made by the selectmen, *under their hands, with a warrant under their hands and seal.* It was held, in the case of a list incorporated in a warrant and by reference made a part of it, that the signature upon the warrant was a sufficient compliance with the statute. In the case of *Darmstaetter* v. *Moloney* (45 Mich., 621), it was held that where the statute required the board of review to sign the assessment-roll after correcting it, that the statute was substantially complied with by the boards signing a certificate pasted on to the roll. (See, also, *City of Bangor* v. *Lancey*, 21 Me., 472; *Johnson* v. *Goodridge*, 15 id., 29.) It thus appears that in other States there is respectable authority sustaining our views, to the effect that the statute in the case under consideration was substantially complied with, that the roll was sufficiently authenticated by the signatures of the assessors signed to it below the certificate.

But we are of the opinion that there is no evidence before us showing that the roll was not in fact signed by the assessors. The assessors were public officers, and in the absence of evidence to the contrary, are presumed to have discharged their duties in accordance with the statute. (*Colman* v. *Shattuck*, 62 N. Y., 348.) The evidence tended to show that the original assessment-roll was lost. The roll produced in court purports to be a copy and was found on file in the town clerk's office. The statute provides that after the assessors shall have completed their roll and attached to it the certificate required, that they shall deliver it to the supervisor of the town, who is required to deliver the same to the board of supervisors at their next meeting. The board of supervisors are required to examine the same and to make corrections if any are required, and to set down in a fifth column, prepared for that purpose, opposite the several amounts set down as valuations of real and personal estate, the respective sums in dollars and cents, to be paid as a tax thereon. It then provides that they shall cause a corrected assessment-roll of each town or ward, or a copy thereof to be delivered to each of the supervisors of the several towns or wards, who shall deliver the same to the clerk of their city or town, to be kept by him for the use of such city or town. It is possible, there-

fore, that we are to presume that this roll was the copy roll delivered to the supervisor to be filed in the town clerk's office. This, however, does not become common-law evidence that it is in fact a copy, at least to the extent that it overcomes the presumption that the assessors have discharged their duties. It is the usual practice in country districts for the supervisors of each town to attend to the copying of his own roll. He usually turns it over to a member of his family or some other scrivener, who performs the labor. Errors in these copies are of common occurrence. To hold that these copies, after the lapse of thirty-five years, should become evidence that would destroy the presumption that sworn officials had discharged their duty and thus divest titles acquired, we are of the opinion would be unjust and dangerous. But this question we regard as settled. In the case of *Boyd* v. *Gray* (34 How., 323), and *Bradley* v. *Ward* (58 N. Y., 401), it was held that the omission of the affidavit made by the assessors from the copy tax-roll delivered to the collector was not a jurisdictional defect, and that the copy roll furnished no evidence tending to show that the original roll did not have the proper affidavit upon it. That in the absence of proof to the contrary the presumption is that the original roll was regular.

In the third place, it is claimed that the assessment is void, for the reason that in the certificate of the assessors the word "creditor" is substituted for that of "debtor." The assessors are required to certify that they have estimated the value of the real estate at the sums which the majority of the assessors have decided to be the true value thereof, and at which they would apprize the same in payment of a just debt due from a solvent debtor, the substituting of the word "creditor" for "debtor" was doubtless a clerical error, but we fail to see how it changes the force or meaning of the certificate. We know of no rule by which a debt due from a solvent debtor should be appraised any higher or lower than a debt from a solvent creditor. Whilst the expression "just debt due from a solvent creditor" may violate a rule in grammar, and for that reason be objectionable, still we are of the opinion that it does not change the legal effect of the certificate. It is not usual to speak of debts due from a creditor; and yet many individuals that are creditors do owe debts to some individual. But the answer to this proposition is the answer that we have made to the preceding ques-

tion, and that is, that the copy of the roll produced in court is not evidence that the certificate upon the original roll was not correct. The clerical error, substituting the word "creditor" for "debtor," was quite as likely to have been made by the copyist as by the assessors.

It is further claimed that this certificate is defective, for the reason that it is dated August 4, 1849. The statute, however, in force at that time provided that the assessors shall complete the assessment-roll on or before the first day of August in every year, etc. The statute further provides that after the roll is completed, that the certificate should be attached, etc. Our present statute, giving until the third Tuesday in August, was not then in force.

In the next place, it is contended that the assessment-roll is void, for the reason that no number of the road district or date of the commissioner's warrant is given upon the roll assessing the highway tax. That the lands in question were wild and unimproved, and that the statute only authorizes an assessment of non-resident lands for highway purposes when the lands are occupied or improved by the owners or their servants or agents. The roll contains a list of non-resident lands assessed for highway purposes, in which the lot in question is entered with the same description and valuation as in the main roll, in which it is assessed for one and one-fourth day's work, and the tax for the same seventy-eight cents. The statute provides that the commissioners of highways in the several towns in this State shall have the care and superintendence of the high-ways and bridges therein; and that it shall be their duty to cause the highways and the bridges to be kept in repair, and also to divide their respective towns into so many road districts as they shall judge convenient, in writing under their hands, to be lodged with the town clerk, and by him to be entered in the town book. It also provides that it shall be the duty of the overseer of high-ways of each town to repair and keep in order the highways within the several districts for which they shall have been elected. Every person owning or occupying land in the town in which he or she resides, and every male inhabitant above the age of twenty-one years residing in the town when the assessment is made, shall be assessed to work on the public highways in such town, and the lands of non-residents situated in such town shall be assessed for highway labor. The commissioners of highways are required to

make out a list and statement of the contents of all lots, pieces or parcels of land within said town owned by non-residents therein. Every lot so designated shall be described in the same manner as is required by assessors, etc. The commissioners are required to make such estimate and assessment of the whole number of days' work to be assessed in each year. Every male inhabitant above the age of twenty-one years, excepting certain persons, are to be assessed at least one day. The residue is to be apportioned upon the estate, real and personal, of every inhabitant of the town, and upon each tract or parcel of land of which the owners are non-residents. Lands of non-residents within the town, occupied and improved by the owner or by his or their servants or agents, shall be liable for the same assessment for highways as if the owner or owners were residents. It is also the duty of the overseers of highways to give notice to the persons assessed to work upon the highways, and if a non-resident landowner has an agent residing in the town where the assessment is made, to give notice to such agent. If the work assessed to be done upon the highways shall not be done or commuted for, it becomes the duty of the overseer on or before the first day of October of each year, to make out and deliver to the supervisor of his town the list of all the non-residents and persons unknown which were taxed on his lists, and on which the labor assessed by the commissioner of highways has not been paid. It then becomes the duty of the supervisor to receive the list from the overseer and to lay the same before the board of supervisors of the county. It becomes the duty of the board of supervisors, at their next meeting, to cause the amount of such arrearage of labor, estimating a day's labor at sixty-two and one-half cents, to be levied on the land so returned and to be collected in the same manner as the contingent charges of the county are levied and collected. ( 1 R. S. [3d ed.], 616–626.)

We have thus briefly summarized the various provisions of the statute, showing the scheme then in force for the levying and the enforcing of the highway tax. The case presents no evidence tending to show that the town of Olean was not properly divided into road districts, that the highway labor was not properly assessed, that the return of the overseer of the non-resident lands on which the highway tax had not been worked or commuted, was not in due

and proper form. We must, therefore, assume that all of these proceedings were regular and made in accordance with the provisions of the statute and at the times required by the statute. The return of the overseer of highways does not become the roll upon which the board of supervisors attach their warrants, for in that case it would require as many rolls as there are road districts in the town. It is from these various returns that the supervisors make up the tax lists for the whole town to which is attached their warrant. The object of dividing the town into road districts is to divide up among the several overseers of highways the labor that is to be performed, to the end that the highways in their respective districts may speedily receive the benefit of the labor assessed. No benefit could be derived by having the number of the road district upon the supervisors' warrant or tax list. The statute requires no such number, and we do not think it was improperly omitted.

But, again, it is contended that under the statute the power to assess non-resident lands for highway tax is restricted to non-resident lands which have been improved by the owners or his or their servants or agents, etc. But this claim we do not regard as well found, for it will be observed from the express provisions of section 19 of the statute, which we have quoted, that the lands of non-residents situated in such town *shall be assessed* for highway labor. This section covers all non-resident lands. Sections 32 and 33 were inserted by amendments of 1832 and 1835. But these amendments were not intended to limit the provisions of section 19. They were intended, however, to place the agents or servants of the owner occupying the lands upon the same footing in reference to liability for tax as resident owners.

In the next place it is contended that the treasurer's notice of sale of 1852 is defective, for the reason that it is dated September fifteenth instead of September 1, 1852. The statute requires the county treasurer to make out a list or statement of the lands charged with tax, interest and charges liable to be sold and to deliver a copy thereof on or before the first day of September, with a notice that the sale will be made on the first Tuesday of December next, to the printer or proprietor of each of the newspapers which shall have been designated by the board of supervisors of his county for printing the laws therein. Every printer

or proprietor of a newspaper to whom a copy of such notice and list shall have been delivered is required to publish the same in his newspaper once in each week for ten successive weeks previous to the commencement of the sale. No claim is made but that the notice and list was published the requisite length of time before the sale took place. That being so, the statute was substantially complied with. The provisions of the statute in reference to the preparing of the list and notice and the delivery of the same to the printers is mandatory in so far only as to require it to be in time to have the same published ten weeks before the day of the sale. Further than that it must be regarded as directory.

Again, the deed was properly executed by the county judge and treasurer. The statute provides that such conveyance shall be executed by the treasurer and county judge of the county in which the land was sold, under their hands and seals, in such a form as the comptroller shall direct. (Sec. 83, chap. 298, Laws of 1850.)

The record of the deed introduced in evidence shows that it was executed by these individuals in their official capacity, and opposite their names are the letters L. S., standing for *locum sigilli*, the place of the seal. The county treasurer and county judge had no separate official seals of their own, and the seals referred to in the statute could not consequently have intended official seals. The county judge is an officer authorized by statute to take the acknowledgment of deeds, and his certificate to such acknowledgment entitles the same to record. His official signature is required to be entered in the office of the clerk of his county, and as such, proves itself. We are therefore of the opinion that the instrument, although followed by no certificate of acknowledgment, was entitled to record.

Section 81 of part 1, chapter 13, title 3, Revised Statutes (1 R. S., 412), provides that a conveyance made by the comptroller, of lands sold for the non-payment of taxes, " shall be conclusive evidence that the sale was regular." This section was amended by chapter 183 of the Laws of 1850, in which the conveyance was made presumptive evidence that the comptroller had authority to sell and convey the land described in it for arrears of taxes charged thereon, and that all proceedings, things and notices required by law to be had, done or given, prior to the execution of such conveyance by the comptroller, have been had, done and given as required by law. Section

83 of the act under which the sale of the lands in question was made (ch. 298 of 1850), provides that the conveyance executed by the treasurer and county judge shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of two years allowed to redeem, were regular, according to the provisions of the act, and all laws directing or requiring the same, or in any manner relating thereto. The Revised Statutes was again amended in 1855. Chapter 427, by which the presumption attaching to a conveyance executed by the county judge and treasurer, was extended to conveyances thereafter executed by the comptroller, and in 1860, chapter 209, the presumption was further extended to all deeds executed by the comptroller, irrespective of the date of such deeds when the party claiming under it is in possession. Chapter 287, Laws of 1882, provided that all deeds heretofore executed by the comptroller of the State, or by the county judge and county treasurer, or by either, for lands lying in the counties of Cattaraugus and Chautauqua, purchased at a tax sale, shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given prior to the expiration of the time for redemption were regular and according to the provisions of the several acts directing or requiring the same. The second section of this act provides that "whenever a period of fifteen years has and shall have elapsed after the execution of any deed or conveyance heretofore made, or which may hereafter be made by the comptroller of this State, or any county treasurer or by a county judge and county treasurer, of lands of a non-resident owner or owners lying in the counties of Chautauqua or Cattaraugus, pursuant to the sale thereof for, or on account of, any tax or taxes returned as unpaid, and the former owner as claimant of said lands, his heirs or assigns, shall not have entered into actual possession of the same, or some part thereof, within that period, and made permanent and valuable improvements thereon, then every such deed or conveyance shall be conclusive evidence that the sale and all the proceedings prior thereto, from and including the assessment of the land, and all notices heretofore or hereafter required by law to be given previous to the expiration of the time allowed by law to

redeem, were regular and were regularly given, published and served according to the provisions of all laws requiring or directing the same, or in any manner relating thereto." The conditions stated in this section exist in the case under consideration, and, unless this section is unconstitutional, it conclusively establishes the validity of the defendant's title. It is contended on the part of the plaintiff that this act is unconstitutional upon the ground that it takes away vested rights in property, and that it is in violation of section sixteen, article three of the Constitution, which provides that no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title. The act in question is entitled "An act to amend chapter 229 of the Laws of 1879, entitled an act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugus, and the acts amendatory thereof and supplementary thereto." Chapter 229 of the Laws of 1879 is entitled "An act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugus." It is true that these are local acts. But one subject only is embraced in the title. Chapter 229 contains thirty-five sections providing in detail the steps that shall be taken in the enforcing and collection of taxes in the counties named in the title. It provides for the sale of lands for the non-payment of taxes, the giving of deeds to the purchasers, and provides that the deeds shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given, etc., were regular and according to the provisions of the several acts directing or requiring the same. Chapter 287 of the Laws of 1882 is an amendment of section 32 of the former act making these deeds, in certain cases, conclusive evidence, etc. If the former act is not in conflict with the section of the Constitution referred to, we fail to see how the latter act is, for the same subject is mentioned in the title of the latter act that is named in the former act. If, therefore, provisions for the sale of the lands for the non-payment of taxes, the giving of deeds to the purchaser, and the effect that shall be given to such deeds, is embraced within the subject " the collection of taxes," they cannot be objectionable upon this ground. The sale of the lands is one of the means provided for the collection of taxes. Deeds are the evidences of such

sale. The effect that shall be given to the deeds establishes the sale. It appears to us that this is properly embraced under the subject mentioned in the title. It is only necessary that the general subject should be expressed, and it should be given a fair and reasonable interpretation; whatever legitimately comes within the subject is permissible. A similar question has already received the attention of this court in the case of *Harris* v. *Supervisors of Niagara County* (33 Hun, 279 [see authorities there cited upon page 286]; also, *Rogers* v. *Stephens*, 86 N. Y., 623.)

In the next place, does this act take away a vested right in property? The rule, as we understand it, is that retrospective statutes, curing defects in legal proceedings, are not void on constitutional grounds, unless expressly forbidden, where they are intended to cure irregularities only, and do not extend to matters of jurisdiction; that the legislature has power by an act to give such relief as it in the first instance had the power to enact. (Cooley's Const. Lim., 371.)

Statutes to cure irregularities in the assessment of property for taxation, and the levy of taxes thereon, are common. These statutes, when enacted to cure irregularities only, have uniformly been sustained by the courts. The statute in question makes provision as to the effect that shall be given to a deed. It provides that in certain cases it shall become conclusive evidence, etc. An individual cannot have a vested right in a rule of evidence. The legislature has the right to provide what shall and shall not be received as evidence, and may change the rule at its pleasure. It also has power to enact statutes of repose. Thus it may provide that a cause of action shall not be maintained to recover the possession of real property where it has been held adversely for twenty years, etc. In the case of *Rogers* v. *Smith* (5 Hun, 475; S. C., sub. nom. *Rogers* v. *Rochester, etc., R. R. Co.*, 21 id., 44; affirmed, 86 N. Y., 623), the action was brought by certain taxpayers of the town of Greenwood, to obtain the cancellation of certain railroad bonds issued by the town under the town bonding act. The bonds were void on the ground that the petition on which the proceedings were instituted, did not contain the statement that the railroad company was a corporation of the State, etc. The legislature passed an act providing that the bonds issued by the

commissioners should be legal debts and obligations against the town. It was held by this court and the Court of Appeals that the act cured the defect and made the bonds valid.

In the case of *Tifft* v. *The City of Buffalo* (82 N. Y., 204), it was held that the legislature has the power to legalize the acts of a municipality invalid because of irregularities, and that it was not an unlawful exercise of the legislative power to take away defenses based upon mere informalities; that a party had no vested right in a defense where it does not affect his substantial equities. FOLGER, Ch. J., in delivering the opinion of the court, says: "The legislature has the power, to a certain extent, of retrospective legislation; it is not an unlawful exercise of this power to take away defenses based upon mere informalities. A party has no vested right in a defense based upon an informality not affecting his substantial equities. The legislature may change or modify the effect of prior transactions in cases where retrospective legislation is not forbidden by the fundamental law. Such legislation has been held to be lawfully directed to the cure of irregularities in the assessment of property for taxation and the levy of taxes thereon, and when the remedy is applied by the legislature itself in the exercise of its discretionary power, it is not to be said that it has violated the duty to restrict the city in the power of assessment." (See, also, *People ex rel. Kilmer* v. *McDonald*, 69 N. Y., 362; *Astor* v. *The Mayor*, etc., 62 id., 580; *Webb* v. *Den*, 17 How. [U. S.] R., 576; *Watson* v. *Mercer*, 8 Pet., 88; *Satterlee* v. *Matthewson*, 2 id., 380.)

In the case under consideration, no question is made but that the assessment-roll of 1849 was made by the duly elected assessors of the town; that the tax was levied by the board of supervisors of the county, and that the tax had not been paid by the original owner. The defects complained of in no case go to the jurisdiction of the assessors or of the board of supervisors. They are, at most, irregularities, and under our understanding of the authorities, the legislature had power to cure them by a retrospective act.

We have referred to the various statutes making the comptroller's deed and the deed of the county judge and treasurer presumptive evidence, for the purpose of showing the changes from time to time and the legislative tendency to establish the validity of tax titles. It becomes the duty of the court to keep this presumption

of regularity in mind when considering irregularities which do no harm to the owner. Some of the provisions of the statute relating to the levying and collecting of taxes are intended for the security and protection of the citizen. He is entitled to know with reasonable certainty for what land he is taxed, the amount of such tax, etc. He is entitled to have the notices required by statute to be served at the time and in the manner prescribed. The performance of these requirements are mandatory, and if they are not observed he cannot be legally divested of his title. Other provisions of the statute are designed for the information of the officers upon whom devolves the duty of enforcing the collection of the tax, as to the mode of their proceeding, etc., a non-compliance with which would not in any respect affect the taxpayer. These provisions are directory merely, and if not strictly observed would not invalidate the proceeding.

The lands in question are a part of the 100,000 acre tract conveyed to Benjamin Chamberlain in 1835. Until a recent date they appear to have been wild and uncultivated and considered as of little value. They are now covered with oil wells and are reputed to be of great value. Large sums of money have been expended in developing the territory, thus making the questions here considered of more than ordinary importance. Taxes are levied for the support of the government. The government is for the protection of the rights and property of its citizens. All are interested in its maintenance and each should bear his proportionate share of the expense of maintaining it. Our present tax laws are designed to be reasonable and uniform. The taxpayer can readily ascertain the amount he is required to pay and a liberal time is given him within which to make the payment. If he omits to pay and his land is sold, he has still two years within which he can redeem. If, after this delay, he suffers his title to be transferred to a purchaser, the loss must be attributed to his neglect to protect his rights, and not to the fault or injustice of the law. He should not be permitted to defeat the title of the purchaser by interposing mere technical objections. Where all the material requisitions of the law have been substantially complied with, the courts should not hesitate to sustain rights fairly acquired under them. They should not be on the alert to discover frivolous objections and resort to mere techni-

calities to defeat the claims of a purchaser. The object and design of the statutes should be regarded. Whilst we think that the tax law which deprives a person of his proprerty should be strictly followed, still we do not believe that it is the duty of the courts to so strictly construe it as to make it a snare, rather than a means of supporting the government.

The motion for a new trial should be granted, with costs to abide the event.

Barker and Childs, JJ., concurred; Bradley, J., not sitting.

Motion for a new trial granted, with costs to abide the event.